**Mary Lupe NAVARRETTE, Appellant,**

v.

**TEXAS DEPARTMENT OF HUMAN RESOURCES, Appellee.**

No. 08–82–00354–CV.

Court of Appeals of Texas, El Paso.

April 11, 1984.

Antonio Rodriguez, El Paso, for appellant.

Max Higgs, Asst. County Atty., El Paso, Mitchell J. Green, Asst. Atty. Gen., Austin, for appellee.

Before WARD, OSBORN and SCHULTE, JJ.

## OPINION

WARD, Justice.

The Texas Department of Human Resources instituted this action against the natural mother and the several fathers of seven children to involuntarily terminate their parental relationship with the seven children. After trial before the court without the intervention of a jury, the court entered judgment terminating the parental rights of each natural parent. The natural mother alone appeals from the judgment. Findings of fact and conclusions of law are contained in the judgment and additional findings were made and filed by order of this Court after the case had reached this Court on appeal. The additional findings were filed pursuant to our authority under Rule 434, Tex.R.Civ.P.; *W____ H____ v. Moore*, 589 S.W.2d 830 (Tex.Civ.App.—Dallas 1979, no writ). On appeal, the mother now attacks the legal and factual sufficiency of the evidence to support the court's findings and conclusions, complains of the pleadings, and maintains she was denied due process of law as guaranteed by the United States Constitution and that the State failed to show that other alternatives short of termination were not available to adequately protect the children. We will affirm.

With regard to the natural mother, the court has now found the following:

That she allowed the children to remain in a home that was filthy beyond description.

That she allowed the children to remain in a home where there were considerable quantities of spoiled food, dirty clothing, feces, stuffed-up toilets, garbage all over the floor to the extent that the health department had to be called and the sanitation department had to be called to remove several truck loads of garbage from the home.

The home was infested with roaches. They were even inside the refrigerator. There was very little food maintained in the home and the children themselves were infested with lice.

The court further found that Mary Lupe Navarrette knowingly engaged in conduct that endangered the physical and emotional well being of the children to-wit:

(1) That she ran around in the streets at night naked with the infant child in her arms.

(2) That she ran off the homemaker that was placed in the home to assist her by the Department of Human Resources by threatening to kill her,

(3) That she left the children with her disabled grandparents for considerable lengths of time unsupervised, and

(4) That the grandparents were disabled in the sense that the grandmother is a double amputee and partially blind and the grandfather is mentally disabled.

The court found that the grounds for termination which existed were those which were set forth in Section 15.02(1)(D) and (E) of the Texas Family Code Annotated and that termination was in the best interest of the children.

■ The mother by her seventh point of error complains that the State failed to specifically plead the statutory grounds upon which it requested termination of parental rights since it merely alleged that termination was required under Section 15.-02(1), Tex.Fam.Code Ann., and did not allege which of the eleven subsections thereunder authorized termination. No complaint to the pleadings was made by either

special exception or plea in abatement, and the complaint was waived. The seventh point is overruled.

The mother's fifth point of error is to the effect that the trial court erred in terminating the parent-child relationship without a finding that a violation of Section 15.02(1) had occurred. In effect, we originally sustained that point since we ordered the additional findings of fact to be filed directly in this Court by the trial court. Those findings now clearly establish that violations of both statutory subsections 15.02(1)(D) and (E) occurred. Point of Error No. Five is now overruled.

The mother's sixth point of error is to the effect that the trial court erred in terminating the relationship without finding that it was in the best interest of the children to do so. The trial court specifically found that termination was in the best interest of the children. The court has made the positive finding under Section 15.02(2) as required by the Family Code. See: *W____ H____ v. Moore*, supra; *Matthews v. Simmons*, 589 S.W.2d 156 (Tex.Civ.App.—Tyler 1979, no writ). The sixth point is overruled.

The mother's third and fourth points challenge the legal and factual sufficiency of the evidence supporting the trial court's finding that she knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional well being. This point is addressed primarily to the proceedings concerning the six oldest children, since the first two points concern the youngest. As to these six children, Appellant's complaint is that proof is lacking that this parent knowingly neglected the children by exposing them to conditions or surroundings resulting in physical or emotional harm. Section 15.02(1)(D) uses terminology which makes the intent or knowledge of the parent a necessary element in dissolving the parent-child relationship. *Higgins v. Dallas County Child Welfare Unit*, 544 S.W.2d 745 (Tex.Civ. App.—Dallas 1976, no writ); *Carter v. Dallas County Child Welfare Unit*, 532 S.W.2d 140 (Tex.Civ.App.—Dallas 1975, no writ). The mother does not challenge the trial court's determination that the surroundings in which the children were placed and allowed to remain were dangerous to their physical well being nor that for five years those living conditions had deteriorated. Her position is that she could not have knowingly or deliberately placed the children in those conditions since all witnesses did testify that she had mental and emotional impairments. The record does show that while she was in New Mexico she did spend at least a brief period in a mental hospital and was the subject of a commitment hearing and was also committed to a mental hospital while in California. However, the only issue on this appeal is whether she knew the dangers that her children were subjected to. Twice during her testimony she offered direct evidence of her knowledge of the abominable conditions in the home. The abhorrent physical conditions in the home were themselves circumstantial evidence of her knowledge upon which the trial court could have reached a clear and convincing conclusion that she acted with full knowledge. She explained the conditions in the home as a result of a struggle to overcome oppressive economic, social and emotional forces. Without repeating the evidence, we have examined it and there is substantial evidence that her inability to care for her children was due to her own indifference and not due solely to her misfortune, illness or diminished mental ability. She was uncooperative with homemakers assigned to clean the home, going so far as to threaten to kill one, and was uncooperative with her social worker, refusing to seek medical treatment. The history of the case shows six years of worsening neglect broken only by small improvements shortly before the termination hearing. The representations about future intentions merely repeat similar assurances given in the past and then ignored. Diminished mental capacity is all that is shown, and diminished mental capacity does not negate a parent's ability to knowingly neglect her children. *B____ J____ M____ v. Moore*, 582 S.W.2d

619, 621 (Tex.Civ.App.—Dallas 1979, no writ). There was no evidence to indicate that despite periods of emotional distress she was at any time incapable of knowing that the wretched conditions in the home were injurious to her children. We hold that the State has produced evidence which is clear and convincing that she knowingly placed and knowingly allowed the children to remain in conditions or surroundings which endangered their physical and emotional well being and that termination was in the best interest of the children.

We hold that the petitioner not only proved the requirements of both subsection D and E, but that termination was in the best interest of the children and that the essential facts were proven by the clear and convincing standard. *In the Interest of G.M.*, 596 S.W.2d 846, 847 (Tex.1980). The third and fourth points are overruled.

■ The first and second points challenge the legal and factual sufficiency of the evidence supporting the trial court's findings that justified the termination order as to the youngest child, Jonathan. The proof here shows that the original petition was filed July 28, 1981, and that the mother subsequently became pregnant with Jonathan. He was born on March 31, 1982. The amended petition which included him was then filed on April 6, and the hearing was held on August 12, 1982. Soon after the birth, the child was removed by the caseworker and the mother never took him home. Yet from October, 1981, until the child was born, the mother lived in the grandparents home where the deplorable conditions existed, and it was apparent to the trial court that she would continue to live under those same conditions if the child was returned to her. Section 15.021 expressly provides for termination of parental rights to an unborn child. Provisions of Section 15.02 have been utilized even before the passage of this section to protect the unborn. See: *Allred v. Harris County Child Welfare Unit*, 615 S.W.2d 803, 806 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.). Her presence in the home for the six months that she was pregnant with Jonathan provides a factual basis for the termination of the parental rights under both Sections 15.02(1)(D) and (E). To hold otherwise would defeat the purpose of Section 15.021 since it would prevent termination until the infant had been born and exposed to the same unsanitary conditions that had already been judicially determined to be injurious to the infant's older brothers and sisters. On this basis we overrule points one and two.

■ By her last two points, the natural mother contends that the trial court's termination of her parental rights violated rights guaranteed by the First, Ninth and Fourteenth Amendments to the United States Constitution and that the evidence was legally and factually insufficient to show that other alternatives short of termination were not available to adequately protect the children. Parents' fundamental rights do not preclude state conduct where the state's conduct becomes necessary. The clear and convincing standard of proof guarantees the constitutionality of termination proceedings and a consideration of alternatives to terminate is not required. *In re L.F., T.F., and W.F., Jr.*, 617 S.W.2d 335, 340 (Tex.Civ.App.—Amarillo 1981, no writ).

Regardless, the trial court had before it substantial evidence that remedies less drastic than termination had been tried and had failed. In-home assistance from professional homemakers, community volunteers and health department officials had not improved conditions. Placement with relatives in El Paso was unavailable. The natural mother had minimal employment possibilities and the only alternative she offered the court was to move to Arizona to live with relatives in a small town. A similar plan involving relatives in California had already been tried and had failed and resulted in placement of the children in a foster home on another occasion. We overrule the last two points.

We affirm the judgment of the trial court.