833 S.W.2d 730 (1992)
DIRECTOR OF The DALLAS COUNTY CHILD PROTECTIVE SERVICES UNIT OF The TEXAS DEPARTMENT OF HUMAN SERVICES, Appellant,
v.
Larry Wayne BOWLING, Jr., Appellee.
No. 05-91-01184-CV.
Court of Appeals of Texas, Dallas.
July 10, 1992.
*731 David Cole, Dallas, for appellant.
Jordan Holt, Dallas, for appellee.
Before BAKER, BURNETT and ROSENBERG, JJ.

OPINION
BURNETT, Justice.
The Director of the Dallas County Protective Services Unit of the Texas Department of Human Services (State) brought suit to terminate the parent-child relationships of Larry Wayne Bowling, Jr. (father) and Cheryl Bowling (mother) to their two youngest children, L.B. and C.B. The mother voluntarily relinquished her rights to both children before trial. The trial court terminated the father's rights to L.B., but granted an instructed verdict that precluded the jury from considering terminating his parental rights to C.B. In one point of error, the State asserts that the trial court erred because there was competent evidence to submit the issue to the jury. The guardian ad litem brings additional points of error complaining that the trial court's denial of a motion for continuance prevented him from presenting two witnesses. We sustain the State's point of error. Because we sustain the State's point of error, we need not consider the guardian ad litem's points of error. We reverse the trial court's judgment as to the father's parental rights to C.B. We remand this cause for a new trial.

FACTS
The father left a drug rehabilitation program to see the mother. By doing so, he violated his parole terms on a drug-related offense. While visiting her, he sexually abused his eighteen-month-old son. L.B. was about six months old at this time. The mother was two to four months pregnant with C.B. There was no evidence presented on whether the father knew the mother was pregnant. The father was sent to jail for violating his parole agreement. In jail, he admitted to a caseworker he sexually abused his oldest son. He said that his father had molested him that way. He could not believe that he had done the same thing to his son.
One month later, L.B. was hospitalized for a seizure disorder. The hospital called a caseworker with the Department of Human Services. The mother was visibly pregnant when the caseworker visited her in the hospital. The mother began counselling and parenting classes but never completed them. C.B. was born in August 1989 while the father was still in jail.
In Spring 1990, the mother, L.B., and C.B. lived in a family shelter. C.B. was seven to eight months old at this time. The shelter director testified that the mother was unable to do simple things like feed and bathe the children or change their diapers without being reminded. L.B. required medication for his seizures. The mother would forget or refuse to buy his medication.
L.B. and C.B. went into foster care in May 1990. The children's paternal grandmother, *732 who already had custody of the oldest son, sought custody of L.B. and C.B. She testified that the father was concerned about the children being around the mother's family because of a history of sexual abuse in the mother's family. After conducting a home study, the caseworker decided not to place the children with the grandmother. The caseworker believed that the grandmother had not protected her own son from sexual abuse by his father and that there had been a history of physical abuse between her and her husband.
The trial court found that there was no evidence requiring it to submit to the jury the issue of the termination of the parentchild relationship between the father and C.B. The jury found that the parent-child relationship between the father and L.B. should be terminated. The trial court did not terminate the father's parental rights to C.B. The court did find that the father's access to or possession of C.B. would endanger her physical and emotional wellbeing and would not be in her best interest.

INVOLUNTARY TERMINATION OF THE PARENT-CHILD RELATIONSHIP
In one point of error, the State asserts that the trial court erred in granting the father's motion for instructed verdict that precluded the jury from deciding whether to terminate the parent-child relationship between him and C.B. The State argues that the Texas Family Code allows the State to protect C.B. even though she was born after the conduct forming the basis for the involuntary termination suit.
The father did not file a brief with this Court. Counsel for the father argued at trial that the State did not present clear and convincing evidence for the case to be submitted to the jury. The clear and convincing evidence standard is the correct standard for the jury's evaluation of the evidence in a termination case. See Sylvia v. Dallas County Child Welfare Unit, 771 S.W.2d 198, 200 (Tex.App.-Dallas 1989, no writ); Ziegler v. Tarrant County Child Welfare Unit, 680 S.W.2d 674, 676 (Tex.AppFort Worth 1984, writ ref'd n.r.e.). It is not the standard for an instructed verdict. Rather, the trial judge must submit the issue to the jury if there is any competent evidence raising a fact question on the issue. See Dryden v. City Nat'l Bank of Laredo, 666 S.W.2d 213, 215 (Tex.App.-San Antonio 1984, writ ref'd n.r.e.). In reviewing an instructed verdict, we consider all evidence favorable to appellant and disregard all contrary evidence and inferences. Corbin v. Safeway Stores, Inc., 648 S.W.2d 292, 293 (Tex.1983).
In a termination proceeding, the court must focus on the acts and omissions of the parent and also on the child's best interest. See Holley v. Adams, 544 S.W.2d 367, 370 (Tex.1976). The State brought suit under Texas Family Code section 15.-02(1)(D) and (E) which allows the court to involuntarily terminate the parent-child relationship if the court finds:
(1) the parent has: ...
(D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical and emotional well-being of the child; or
(E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;
...; and in addition, the court finds that (2) termination is in the best interest of the child.
Tex.Fam.Code Ann. § 15.02 (Vernon Supp. 1992). There is a strong presumption that children's best interests are served by keeping them with their natural parents. See Ziegler, 680 S.W.2d at 676. Once evidence is produced to support a finding that staying with the natural parents is not in the child's best interest, the case proceeds as if no presumption exists. Id.
The father argued to the trial court that the abuse of his oldest son could not endanger C.B. because it occurred before she was born. "Endanger" under section 15.02 means to expose to loss or injury, or to jeopardize. See Texas Dep't of Human Services v. Boyd, 727 S.W.2d 531, *733 533 (Tex. 1987). It is not necessary that the conduct be directed at the child or that the child actually suffer injury. Id. Section 15.02(1)(E) does not require actual and concrete threat of injury to the child's emotional and physical well-being. Id. If the evidence shows a course of conduct which has the effect of endangering the child's physical or emotional well-being, then a finding under section 15.02(1)(E) is supportable. Id. at 534.
Case law interpreting section 15.-02(1)(D) and (E) has allowed for termination of the parent-child relationship for violent or negligent conduct directed at the other parent or other children even where the behavior was not committed in the child's presence. See Navarrette v. Texas Dep't of Human Resources, 669 S.W.2d 849, 850 (Tex.App.-El Paso 1984, no writ) (child taken from hospital not subjected to deplorable living conditions of six other children); In the Interest of B.J.B. & C.E.B., 546 S.W.2d 674, 676 (Tex.Civ. App.-Texarkana 1977, writ ref'd n.r.e.) (father stabbed mother in kitchen while daughters played in bedroom). However, one court has held that a child's presence during the physical abuse of a parent or sibling is necessary to endanger the child's physical or emotional well-being. See Lane v. Jefferson County Child Welfare Unit, 564 S.W.2d 130, 132 (Tex.Civ.App.-Beaumont 1978, writ ref'd n.r.e.).
In Clark v. Clark, this Court upheld the termination of a father's rights to his unborn child. See Clark v. Clark, 705 S.W.2d 218, 219 (Tex.App.-Dallas 1985, writ dism'd). The father had been convicted for the murder of the mother's two-and-a-half-year-old daughter sixteen months before the birth of his child. Id. That father also argued that, while the conduct did not need to be directed at his child, it had to be committed in the child's presence. We conclude now, as we did in Clark, that section 15.02(1)(E) does not require that the child witness the conduct. Id.; but see Lane, 564 S.W.2d at 132. A child's presence during an abusive act directed at another is evidence that the child's emotional and physical well-being has been endangered, but it is not a requirement under section 15.02(1)(E). See Boyd, 727 S.W.2d at 534; Clark, 705 S.W.2d at 219; Ziegler, 680 S.W.2d at 676 (other children witnessed repeated abuse of mother and oldest son by various husbands).
The father argued that, even if the law does not require that the abuse occur in C.B.'s presence, he had to know that the mother was pregnant before his conduct could endanger C.B. See Allred v. Harris County Child Welfare, 615 S.W.2d 803, 806 (Tex.Civ.App.-Houston [1st Dist.] 1980, writ ref'd n.r.e.). In Allred, the Houston Court of Appeals upheld the trial court's termination of the father's parental rights to an unborn child where the father physically abused his wife in hopes of terminating the pregnancy. Id. The father's knowledge of the pregnancy was only one factor that the Houston Court of Appeals considered. It also noted that the father engaged in conduct that he knew would revoke his parole. Id.
The law does not require that the child be a victim of abusive conduct before the State can involuntarily terminate a parent's rights to the child. See Tex.Fam.Code Ann. § 15.02(1)(E) (Vernon Supp.1992). Although the case law has not specifically dealt with sexual abuse, the courts have terminated parental rights to children, including an unborn child, where the evidence showed physical abuse toward a parent or another child, or neglect of other children. See, e.g., Clark, 705 S.W.2d at 219; Navarrette, 669 S.W.2d at 850. We see no basis for distinguishing between physical abuse and sexual abuse. If the evidence shows a course of conduct that has the effect of jeopardizing a child's physical and emotional well-being, then there is evidence to submit the issue to the jury. Cf. Boyd, 727 S.W.2d at 534 (finding under section 15.02(1)(E) is supportable by course of conduct which has the effect of endangering the physical or emotional wellbeing of the child).
The trial court had competent evidence before it that the father engaged in conduct that endangered the emotional and physical well-being of C.B. The father admitted *734 to sexually abusing his oldest son. The father was on probation for a drugrelated offense which required him to complete a drug rehabilitation program. He left the rehabilitation program early. He knew that his conduct would revoke his probation and send him to jail. His confinement left the children with the mother who could not care for them. He already had spoken to the children's grandmother about his concern of leaving the children with the mother's family because of past sexual abuse in her family.
The trial court should have submitted to the jury the issue of the termination of the father's parental rights to C.B. We sustain the State's point of error. We reverse the trial court's judgment regarding Larry Wayne Bowling, Jr.'s parental rights to C.B. We remand this cause for a new trial.