TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00798-CV






Richard Serrano Hogeda, Appellant



v.



Ernestine Mendez-Dotson, Appellee






FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 119TH JUDICIAL DISTRICT


NO. FA92-0320-A, HONORABLE DICK ALCALA, JUDGE PRESIDING 







 Following a non-jury trial, the trial court terminated the parent-child relationship
between appellant Richard Hogeda and his two children S.H. and J.H. By three points of error,
Hogeda challenges the factual sufficiency of the evidence and raises an evidentiary point of error. 
We will affirm the trial court's order. 


Factual Sufficiency of the Evidence


 A court may terminate a parent-child relationship if it finds that (1) the parent has
engaged in any of the specific conduct enumerated in the Family Code as grounds for termination
and (2) termination is in the best interest of the child. See Tex. Fam. Code Ann. § 161.001 (1),
(2) (West Supp. 1999); D.O. v. Texas Dep't of Human Servs., 851 S.W.2d 351, 352 (Tex.
App.--Austin 1993, no writ) (citing Texas Dep't of Human Servs. v. Boyd, 727 S.W.2d 531, 533
(Tex. 1987)). In this case, the trial court found that Hogeda engaged in conduct that endangered
the physical and emotional well-being of the children and that termination was in the children's
best interest. Tex. Fam. Code Ann. § 161.001 (1)(E), (2) (West Supp. 1999). By points of error
one and three, Hogeda contends that the evidence is factually insufficient to support these findings. 
 Dotson had the burden to prove the elements necessary for termination by clear and
convincing evidence, meaning that degree of proof which produces in the mind of the trier of fact
a firm belief or conviction as to the truth of the finding. See D.O., 851 S.W.2d at 353 (citing In
re G.M., 596 S.W.2d 846, 847 (Tex. 1980)). To review the factual sufficiency of the evidence,
we consider and weigh all of the evidence and will set aside the findings only if the evidence is
so weak or the evidence to the contrary is so overwhelming as to make it clearly wrong and unjust. 
See id. (citing Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986)). 

 Richard Hogeda and Ernestine Mendez-Dotson, formerly Ernestine Hogeda, had
two children, S.H., born in April 1985, and J.H., born in March 1987. Dotson filed for divorce
in March 1992. Hogeda and Dotson were divorced in May 1992 and Dotson was appointed sole
managing conservator of the children. (1) Hogeda was appointed possessory conservator and ordered
to pay $100 per month child support. In 1994, following Dotson's motion to modify the divorce
decree, the court ordered that all visitation between Hogeda and the children be in the presence
of Hogeda's father. All other provisions of the divorce decree remained the same. Dotson
petitioned to terminate Hogeda's parental rights, and in September 1997, the trial court ordered
Hogeda's parental rights to the two children terminated. The trial court filed findings of fact and
conclusions of law. The court found Hogeda had a history of "violent and emotional abuse
towards [Dotson,] some of which was conducted in the presence of the children. Additionally,
the trial court found specific instances occurring in 1988 and 1992 that Hogeda had physically and
emotionally abused Dotson. 

 At trial Dotson testified that there were so many instances of physical violence that
after a while they had blended together. She related four occasions of physical and emotional
abuse by Hogeda, some of which were conducted in the children's presence. 

 The first instance occurred before their divorce in January 1988. The children
stayed with a babysitter while Hogeda and Dotson attended a relative's birthday party in Big Lake. 
At the party Dotson left Hogeda to get a drink. While away from Hogeda, Dotson saw a friend
and they visited for a while. When Dotson returned to Hogeda he was very angry that she had
been away for so long and he declared that they were leaving the party. Dotson knew Hogeda's
anger and considered staying at the party with her family; however, she did not stay as she was
too afraid of what Hogeda might do to her later. As they left in the car, Hogeda was screaming,
ranting and raving at Dotson. They picked up the children at the babysitter and then went to
Dotson's sister's house to get some of Dotson's belongings. The children were waiting in the car
while Hogeda and Dotson went into the house. Hogeda started yelling and screaming at Dotson
and then pulled her down, grabbed her by the hair and dragged her from the back bedroom
through the house, down the front steps and into the car. S.H. saw Hogeda dragging Dotson out
of the house. As they drove away, Hogeda continued to rage and S.H. was crying. When they
arrived in the town of Barnhart, Dotson no longer wanted to be in the car. She told Hogeda that
she needed to go to the bathroom. When he stopped the car, she got out, went behind a building
and began running back toward her sister's house. Hogeda soon realized that Dotson was not
coming back so he turned the car around and began chasing her down the road. He stopped, got
out of the car, grabbed Dotson and pushed her against the car window. Dotson got back in the
car and for the next seventy miles until they returned home Hogeda verbally abused Dotson. Once
at home, Hogeda threw Dotson on the floor, slapped her, and then put the children to bed. Dotson
explained that this entire incident had a visibly negative effect on the children, especially S.H. 

 Hogeda admitted that he became angry with Dotson for being gone from the table
for so long and that he "lost it" and threw a drink on her. He did not remember going to the
babysitter's, having the children in the car, or becoming physically violent with Dotson. 

 Dotson also recalled a violent incident in April 1992 while the divorce was pending. 
Dotson recounted that she was driving with the children when S.H. said she saw Hogeda driving
in the opposite direction. Dotson looked in her rearview mirror in time to see Hogeda swerve,
turn around, and begin following her. Dotson started to drive very fast toward the police station. 
S.H. was screaming and was frightened. Dotson was afraid that if she stopped the car Hogeda
would harm her. Dotson went through red lights as she headed for the police station. Hogeda was
trying to maneuver his truck to come up alongside Dotson's car. As he did so, his truck ran into
Dotson's car. Dotson immediately grabbed the children and flagged down a passing car. The
driver took Dotson and the children to the police station. Dotson's car was totaled. Dotson
reported this incident to the police. Hogeda pleaded nolo contendere to the offense of endangering
a child and was fined $100. 

 Both children related the events surrounding this incident to Dr. William A.
Montgomery, a psychologist who evaluated the children before trial. Dr. Montgomery testified
that the event had a significant, negative effect on both of the children. Hogeda remembered the
incident differently. He recalled that it was Dotson who turned around over the median and ran
a red light. Hogeda tried to pass her and then he tried to pull up next to her to see if she would
stop. Dotson then tried to cut him off, causing him to hit Dotson's car. 

 Dotson related an incident that occurred on July 2, 1992, when she went to
Hogeda's apartment to pick up the children following their visitation. When she arrived, S.H.
went out to the car. Dotson asked where J.H. was, and Hogeda told her that he was in the
bedroom. Since J.H. was inside, Dotson went into Hogeda's apartment to use the bathroom. 
When she came out of the bathroom, she went to the bedroom to get J.H. She realized J.H. was
not in the bedroom. Before she could leave the apartment, Hogeda threw her on the bed and
sexually assaulted her. Before the assault, Hogeda had locked J.H. outside the apartment. When
Dotson left the apartment J.H. was standing just outside the apartment door. Dotson went to the
police station. 

 Hogeda sexually assaulted Dotson again on July 27, 1992. Though Dotson had
been awarded the house in the divorce, she had been staying with friends because she was afraid
to live there. On July 27 she went to the house to change clothes for work. She checked the
house to make sure nobody was there. As she left the bathroom, Hogeda came out of the shower
area. He led her down the hall and sat her down on the sofa. He then locked all the doors. After
asking Dotson about her new boyfriend, he sexually assaulted her. Hogeda was indicted for
burglary of a habitation with intent to commit sexual assault. On August 24, 1992, he was placed
on deferred adjudication and placed on probation. Subsequently, the State filed a motion to revoke
Hogeda's probation due to his failure to pay child support, his delinquency in paying probation
fees, and his failure to report to his probation officer. On April 10, 1995, he was adjudicated and
sentenced to prison for twenty-three years. Currently Hogeda is serving this sentence. At the
termination proceeding, Hogeda admitted that the facts of this incident were true. 

 Dotson stated that Hogeda's anger and abuse were directed at her rather than the
children. She did not believe that Hogeda would ever physically hurt the children. She was under
an illusion that at some point the abuse would stop. Dotson testified that S.H. witnessed many
more assaults than Dotson reported. 

 The children told Dr. Montgomery that they feared their father, viewed him as a
threat, and wanted no contact with him when he was released from prison. It was Dr.
Montgomery's opinion that these were the children's true feelings and that there had been no
coaching of their statements. The last time the children saw their father was when they spent a
week with him at Christmas in 1993. 

 Several family members and friends testified on Hogeda's behalf and all thought
he was a good father. When the children were small, Hogeda stayed at home and was the primary
caregiver while Dotson worked during the day. After the children visited with him for a week
during Christmas in 1993, S.H. called him once. After the phone call Hogeda tried to maintain
contact with the children through his family. Because Dotson had moved several times however,
he never knew where she was living. 


 Hogeda argues that the remoteness in time of the alleged January 1988 incident and
the evidence that before the divorce Hogeda was a loving, affectionate, and stable primary
caregiver during the children's early lives establish that the trial court erred in finding that Hogeda
engaged in conduct that endangered the physical or emotional well-being of the children. In a
termination suit, "acts done in the distant past, without showing a present or future danger to a
child, cannot be sufficient to terminate parental rights." Wetzel v. Wetzel, 715 S.W.2d 387, 391
(Tex. App.--Dallas 1986, no writ). Even without considering the 1988 incident, we conclude that
sufficient evidence supports the trial court's finding. Evidence was introduced that Hogeda
engaged in conduct that directly endangered the children. Hogeda endangered the children when
he crashed into Dotson's car while the children were in the car, and again when he locked the
children outside his apartment while he sexually assaulted Dotson. Additionally, evidence was
submitted that Hogeda had physically and verbally abused Dotson in the children's presence. It
is not necessary for a finding that a person engaged in conduct that endangered the physical and
emotional well-being of a child that the abusive conduct be directed at the child. See Director of
Dallas County Child Protective Servs. Unit v. Bowling, 833 S.W.2d 730, 733 (Tex. App.--Dallas
1992, no writ). According to Dr. Montgomery's testimony, the physical and emotional well-being
of the children were harmed by Hogeda's abusive actions toward Dotson. We conclude that the
evidence submitted supports the trial court's findings that Hogeda engaged in conduct that
endangered the physical or emotional well-being of the children. Point of error one is overruled.


 By point of error three, Hogeda challenges the factual sufficiency of the evidence
supporting the trial court's finding that termination of his parent-child relationships with S.H. and
J.H. were in the children's best interest. Several factors may be considered in making this
determination, including, but not limited to, the desires of the children and the emotional and
physical needs of the children now and in the future. Trevino v. Texas Dep't of Protective &
Regulatory Servs., 893 S.W.2d 243, 248 (Tex. App.--Austin 1995, no writ) (citing Holley v.
Adams, 544 S.W.2d 367 (Tex. 1976)). 

 Dr. Montgomery interviewed both children and stated that based on his education
and training and his professional experience and contact with the children it was his opinion that
it would be in the children's best interest for Hogeda's parental rights to be terminated. He
concluded that not terminating the parental rights of Hogeda would have a traumatic effect on both
children. S.H. had very negative feelings about Hogeda and accused him of abusing her and
Dotson. She feared Hogeda and expressed the desire to have no contact with him when he is
released from prison. J.H. also expressed very negative feelings about Hogeda. J.H. was
frightened of Hogeda and also did not want any contact with him when he is released from prison. 
Both children spoke well of their stepfather and expressed their desire to be adopted by him. 

 While the record contains evidence that Hogeda was a loving father during the
marriage and that in the past he had a good relationship with the children, the evidence also
reveals that Hogeda has been abusive and has placed the children in dangerous situations. We
conclude that the court's finding that terminating Hogeda's parental rights was in the children's
best interest was not against the great weight of the evidence. Point of error three is overruled.

Admission of Conviction Based Upon a Nolo Contendere Plea


 By point of error two, Hogeda contends that the trial court erred by admitting into
evidence his July 1992 conviction for endangerment to a child by intentionally chasing and
ramming Dotson's car. Hogeda contends that, since his conviction was based upon a plea of nolo
contendere, the conviction should not have been admitted into evidence. Rule of Evidence 410(2)
provides that a plea of nolo contendere is not admissible against the defendant who made the plea. 
Tex. R. Evid. 410(2). 

 Dotson responds that Hogeda waived any objection to the admission of such
evidence because he introduced the evidence. Hogeda replies that he did not waive error because
he objected when Dotson first mentioned the conviction. Hogeda later offered evidence of the
conviction in an effort to rebut or explain the improperly admitted conviction. See Rogers v.
State, 853 S.W.2d 29, 35 (Tex. Crim. App. 1993). 

 In reviewing the record, we conclude that error, if any, in admitting evidence of
Hogeda's July 1992 conviction was harmless. See Tex. R. App. P. 44.1. Evidence other than
the conviction showed Hogeda placed the children in danger by chasing the car in which the
children were riding and ramming his truck into the car. Also, evidence other than the July 1992
car chase supports the trial court's finding that Hogeda endangered the children's physical and
emotional well-being. Point of error two is overruled. 




Conclusion


 We affirm the trial court's order.



 

 J. Woodfin Jones, Justice

Before Chief Justice Aboussie, Justices Jones and B. A. Smith

Affirmed

Filed: December 29, 1998

Do Not Publish
1. Ernestine married Mike Dotson in August 1993. For convenience we will refer to appellant
as Hogeda and to Ernestine as Dotson. 



 conduct that endangered the physical and
emotional well-being of a child that the abusive conduct be directed at the child. See Director of
Dallas County Child Protective Servs. Unit v. Bowling, 833 S.W.2d 730, 733 (Tex. App.--Dallas
1992, no writ). According to Dr. Montgomery's testimony, the physical and emotional well-being
of the children were harmed by Hogeda's abusive actions toward Dotson. We conclude that the
evidence submitted supports the trial court's findings that Hogeda engaged in conduct that
endangered the physical or emotional well-being of the children. Point of error one is overruled.


 By point of error three, Hogeda challenges the factual sufficiency of the evidence
supporting the trial court's finding that termination of his parent-child relationships with S.H. and
J.H. were in the children's best interest. Several factors may be considered in making this
determination, including, but not limited to, the desires of the children and the emotional and
physical needs of the children now and in the future. Trevino v. Texas Dep't of Protective &
Regulatory Servs., 893 S.W.2d 243, 248 (Tex. App.--Austin 1995, no writ) (citing Holley v.
Adams, 544 S.W.2d 367 (Tex. 1976)). 

 Dr. Montgomery interviewed both children and stated that based on his education
and training and his professional experience and contact with the children it was his opinion that
it would be in the children's best interest for Hogeda's parental rights to be terminated. He
concluded that not terminating the parental rights of Hogeda would have a traumatic effect on both
children. S.H. had very negative feelings about Hogeda and accused him of abusing her and
Dotson. She feared Hogeda and express