# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00018-CV

**R. H., Appellant**

**v.**

**Texas Department of Protective and Regulatory Services, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
## NO. 99-00513, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING

Appellant appeals an order terminating her parent-child relationship with both of her children and appointing appellee Texas Department of Protective and Regulatory Services (the "Department") permanent managing conservator. Appellant appeals on the following two grounds: (1) that the evidence is legally and factually insufficient to support the termination of appellant's parental rights and (2) that the testimony of Charles and Barbara Leverett should not have been excluded by the trial court. We will affirm the decree of termination.

### FACTUAL AND PROCEDURAL BACKGROUND

In July 1997, appellant married Larry Duarte. At that time, appellant was 17 years old and Duarte was 29 years old. The couple had two children: F.D., a boy, born on January 20, 1998, and V.D., a girl, born on December 29, 1998. During their marriage, appellant and Duarte lived with appellant's parents or grandparents.

One month after the couple wed, Duarte served 150 days in jail following a conviction of injury to a child. He was found guilty of fracturing the skull and breaking the wrist of his five-month-old daughter, D.C., who was born of a previous relationship. In addition to the term of confinement, Duarte was sentenced to 10 years of probation and was required to attend child abuse classes and counseling for anger management.

Appellant claimed that she did not know of Duarte's violent past when they were first married. Appellant testified that Duarte told her that he went to jail for stalking, violating a protective order, and not participating in anger management classes. Appellant knew Duarte was on probation, but claimed she did not know why he was going to court. She stated that she did not ask Duarte about the proceedings because she felt that if Duarte had wanted her to know he would have told her. Appellant also knew Duarte was taking family violence courses. Further, appellant admitted to discovering legal paperwork related to Duarte's criminal case. Appellant later became fully aware of Duarte's conviction for injury to a child, but she believed that the injuries to D.C. did not happen and that the charges were falsified.

After completing his jail term, Duarte returned to live with appellant at her grandparents' home. F.D. was born on January 20, 1998. At times, appellant and Duarte both worked nights, which resulted in F.D. being left with friends while appellant and Duarte were at work. Appellant's friends, by her own admission, did not properly care for the child, and appellant would often find F.D. covered in urine when she picked him up after work. On at least one occasion, F.D. developed an infection from the urine.

On December 29, 1998, V.D. was born, and one week after her birth, V.D.'s pediatrician declared her healthy. On January 10 or January 12, 1999, appellant left V.D. and F.D. alone with Duarte while she went to the store. When appellant returned, she found both children crying. She asked Duarte what happened, and Duarte told her that while all three of them were lying on a bed, F.D., who was two-years-old at the time, kicked V.D. in the head. Later that evening, V.D.'s head began to swell severely. Bruising on V.D.'s face and eye became noticeable a few days later.

Appellant claims that she called the Austin Regional Clinic about V.D.'s head injury, but could not see a doctor because the clinic was full. She also claims that she called a family member, who was a nurse, for advice about the swelling and that she applied ice to V.D.'s head. Appellant, however, did not take V.D. to the doctor until January 14 for a previously scheduled appointment. The physician's assistant, Chris Crocker, noticed bruising on V.D.'s eye and head. Crocker sent V.D. to the hospital because he suspected that she had a head injury. A CAT scan revealed that V.D. had a fractured skull and some small areas of hemorrhage on the brain. Her leg was also fractured. In addition, V.D. was diagnosed with pneumonia, which was not related to the head and leg injuries.

A radiologist indicated that V.D.'s leg injury was most likely caused by a violent twisting or jerking. Doctors also determined that her head injuries were most likely intentional and found appellant's numerous explanations for the injuries unconvincing. Appellant asserted, at various times, that the injuries were caused by (1) F.D. kicking V.D.'s head; (2) Duarte dropping V.D.; (3) her aunt's ex-boyfriend; (4) a neighbor; (5) pregnancy problems, including seizures and V.D. hitting

3

her head on appellant's hipbone while in utero; and (6) V.D.'s breach position during birth. Doctors explained that it was physically impossible for F.D. to have caused V.D.'s injuries because of his young age. Doctors also explained that V.D.'s injuries could not have occurred during pregnancy or birth. On January 14, 1999, as a result of the opinions of the doctors and the excuses of appellant and Duarte, the Department removed the children from their parents' care and placed the children in foster care.

When later confronted by social workers with the fact that V.D.'s injuries were not accidental and that Duarte was under suspicion, appellant denied that Duarte could have hurt V.D. Even after appellant was confronted with Duarte's past conviction and probation for injury to a child, appellant insisted that V.D.'s injuries occurred as Duarte had initially described: F.D. kicked V.D. in the head. Duarte later confessed to Detective Brett Wilson that he threw V.D. on the bed and then on the floor when she would not stop crying. When appellant was told of this confession, she became upset and wanted to speak to Duarte. She then met with Duarte, and after a very short meeting, they left the Department's offices holding hands.

During the time between V.D.'s injury and Duarte's arrest for injury to a child on January 19, 1999 for the injuries to V.D., appellant continued to live with Duarte. After he was arrested and jailed, appellant continued to support Duarte financially and emotionally by visiting him in jail and sending him letters and money. Appellant raised money for Duarte's criminal defense in the case stemming from V.D.'s injuries. Appellant and her family consistently denied that Duarte could have been responsible for V.D.'s injuries.

4

The Department gave appellant several chance to change her behavior in order to regain custody of her children. Appellant, who is of average intelligence, received assistance from the Department, including a protective parenting class, individual counseling, a psychological evaluation, parenting classes, and individualized parenting skills lessons with a social worker. Appellant did not display improvement and failed to change her behavior and attitude toward her children. Appellant was never able to admit that Duarte was responsible for the injuries V.D. suffered. Appellant told a social worker that she planned to divorce Duarte in order to have her children returned to her. However, once her children were returned, she intended to reunite with Duarte after his criminal case was settled in court. The psychological evaluation indicated that appellant was in denial about the abuse, and Dr. Poole, the psychologist who evaluated appellant, stated that this denial put her children at risk of further harm.

During Department supervised visits with her children, appellant failed to attend to their needs. Appellant called both children "brats" and slapped F.D. on the hands and buttocks. Appellant told F.D. that he was responsible for V.D.'s injuries and for his father being in jail. F.D. cried when left with appellant and pulled away from her. V.D. also cried when appellant held her. Social workers instructed appellant to feed V.D. only a special formula because V.D. suffered from reflux, a medical condition requiring a strict diet to prevent vomiting. Appellant, however, refused to accept the diagnosis and, despite social workers' warnings, ignored the dietary constraints, often giving V.D. juice, which aggravated V.D.'s condition. Appellant failed to change V.D.'s diaper when appropriate, denying that it needed to be changed even after social workers prompted her to do so.

5

F.D. was developmentally delayed when he was first removed from appellant's care. At that time, F.D. was fifty-four weeks old, but his maturity age in gross motor skills was approximately thirty-six weeks. F.D. was also developmentally delayed in his fine motor skills. His maturity age in language development, which was assessed at thirty weeks, was also severely delayed. Testimony indicated that these developmental delays were possibly related to a lack of stimulation at home. Appellant claimed that F.D. was not delayed in development, stating that F.D. could do many things on his own. After being removed from appellant's care, F.D. began treatment with a speech pathologist and his language skills became age appropriate within eight months.

The Department brought an action to terminate appellant's parental rights to F.D. and V.D. The case was tried before a jury for five days in November 1999. The jury found by clear and convincing evidence that appellant knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered the children's physical or emotional well-being, or engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical or emotional well-being of the children, and that termination was in the best interest of the children. Appellant's parental rights were terminated and the Department was appointed permanent managing conservator of F.D. and V.D.

Appellant then perfected this appeal. Appellant challenges the decision to terminate her rights on the grounds that the evidence is legally and factually insufficient to show that termination was in the best interest of both children and that the emotional and physical well-being of the children was endangered by appellant or by the environment in which she placed them. Appellant also appeals the trial court's exclusion of the testimony of her grandparents, Charles and

6

Barbara Leverett, on the grounds that the testimony would not have unfairly surprised the Department and that the testimony was controlling and not cumulative.

## STANDARD OF REVIEW

A court may terminate a parent-child relationship if it finds by clear and convincing evidence that (1) the parent has engaged in any of the specific conduct enumerated in the Family Code as grounds for termination and (2) termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001(1), (2) (West Supp. 2001); *Texas Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976). In this case, the grounds for termination under the Family Code are based on sections 161.001(1)(D) and (E). *See* Tex. Fam. Code Ann. § 161.001(1)(D), (E) (West Supp. 2001). Under these provisions, the trial court may terminate the relationship if it finds by clear and convincing evidence that the parent has "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child" or "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." *Id.* "Clear and convincing" means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegation sought to be established. *Leal v. Texas Dep't of Protective & Regulatory Servs.*, 25 S.W.3d 315, 319 (Tex. App.—Austin 2000, no pet).

When reviewing a jury verdict to determine the factual sufficiency of the evidence, we must consider and weigh all the evidence and should set aside the judgment only if the evidence is so weak and contrary to the overwhelming weight of evidence as to be clearly wrong and unjust. *Cain*

*v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). We will not substitute our judgment for that of the trier of fact merely because we reach a different conclusion. *Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 196 (Tex. App.—Austin 1992, no writ). The heightened standard of proof for terminating a parent-child relationship does not alter the factual sufficiency standard of review at the appellate level. *Leal*, 25 S.W.3d at 320. Our factual sufficiency review of the evidence in a termination case necessarily incorporates whether the challenged finding has been proven by clear and convincing evidence. *Id.*

In deciding a legal sufficiency challenge to an adverse finding on an issue on which the appellant did not have the burden of proof, we consider only the evidence and inferences tending to support the finding and disregard all evidence to the contrary. *Id.* If more than a scintilla of probative evidence supports the finding, it must be upheld. *Id.*

Appellant also challenges the trial court's decision to exclude the testimony of appellant's grandparents. Appellant must establish that the trial court abused its discretion by excluding the testimony. *See Mentis v. Barnard*, 870 S.W.2d 14, 16 (Tex. 1994). Appellant must also show that the error is harmful. *See Alvarado v. Farah Mfg. Co.*, 830 S.W.2d 911, 916-17 (Tex. 1992). A trial court abuses its discretion when it acts in an unreasonable and arbitrary manner, or without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). This Court may not reverse for abuse of discretion merely because we disagree with the decision of the trial court. *Id.* at 242.

**DISCUSSION**

Appellant contends that the evidence submitted at trial is both legally and factually insufficient to support the termination of the parent-child relationship between appellant and her two children, F.D. and V.D. Under section 161.001 of the Texas Family Code, the Department had the burden to establish by clear and convincing evidence that appellant knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered the physical or emotional well-being of the children, or engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical or emotional well-being of the children, and that termination of the parent-child relationship was in the best interest of both F.D. and V.D. *See* Tex. Fam. Code Ann. § 161.001(1)(D)-(E), (2). Appellant asserts that the evidence at trial focused on the alleged physical abuse of V.D. and that almost no evidence was presented regarding the endangerment and the best interest of F.D. Finally, appellant contends that the trial court abused its discretion when it excluded the testimony of Charles and Barbara Leverett, appellant's grandparents.

The Department responds by asserting that it presented sufficient evidence of appellant's endangerment of both of her children at trial and that the interests of the children were addressed by the evidence. The Department asserts that appellant engaged in conduct which endangered her children by (1) permitting Duarte, a convicted child abuser, to have contact with her children, (2) leaving her children with inappropriate caretakers, (3) failing to seek medical treatment for V.D. after her head injury, and (4) mistreating the children during supervised visits. The Department concludes that appellant's failure to appropriately plan for her children's futures, her

9

inability to provide for the emotional and physical needs of the children and to protect the children from abuse, her poor parenting skills, her lack of interest in receiving help from the Department, and the instability of appellant's home environment indicate that termination of her parental rights was in the best interest of F.D. and V.D. As to the testimony of appellant's grandparents, the Department contends that the trial court did not abuse its discretion by excluding the testimony of the Leveretts. The Department also argues that, even if the testimony should have been allowed by the trial court, the error was harmless.

### Endangerment of the Children

The jury was instructed that, in order to terminate the parent-child relationship, it had to find by clear and convincing evidence that appellant endangered her children's physical or emotional well-being either by her conduct or by means of their surroundings and that termination was in the best interest of the children. The jury found that the children's well-being was endangered. To affirm the termination decree, we must find that the evidence is legally and factually sufficient to support only one of the grounds relied upon under sections 161.001(1)(D) and (E). *Id.* § 161.001(1)(D)-(E).

In an involuntary termination proceeding, "endanger" means conduct that is more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment. *See Boyd*, 727 S.W.2d at 533. However, the child need not suffer actual injury. *Id.* Rather, "endangerment" means to expose to loss or injury; to jeopardize. *Id.*; *see also In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996); *Leal*, 25 S.W.3d at 324. Endangerment may occur not only from a parent's acts, but also from a parent's failure to act. *Phillips v. Texas Dep't of Protective &*

10

*Regulatory Servs.*, 25 S.W.3d 348, 353 (Tex. App.—Austin 2000, no pet). Further, a parent's endangering conduct toward one sibling is sufficient to support termination of a parent's rights to all of her children. *Lucas v. Texas Dep't of Protective & Regulatory Servs.*, 949 S.W.2d 500, 503 (Tex. App.—Waco 1997, writ denied); *see also Dir. of the Dallas County Child Protective Servs. Units v. Bowling*, 833 S.W.2d 730, 733 (Tex. App.—Dallas 1992, no writ).

The evidence supports the jury's finding that the children's well-being was endangered. The evidence indicates that appellant was aware of Duarte's previous conviction of injury to a child. Appellant claims that she was unaware of the conviction; however, the jury was presented with evidence to the contrary. Despite the likely knowledge of matters that should have caused her grave concern, she did not take measures to remove her children from Duarte's presence. Although F.D. did not suffer physical injury, he suffered not only the trauma of being present at the time of the assault, but most likely the emotional trauma of witnessing Duarte's abuse of V.D. as well.

Appellant was in a state of denial about the abuse Duarte inflicted upon her daughter. She and her family refused to acknowledge that Duarte injured V.D. Appellant continued to defend her husband and financially supported him after he was arrested for V.D.'s injuries. Appellant expressed a desire to reunite her children with Duarte in the future. Appellant's extreme state of denial was evidence that her children were endangered.

Appellant specifically endangered V.D. by not seeking immediate medical treatment for her head injury. Despite observing extensive bruising and severe swelling of V.D.'s head on January 12, appellant did not take her daughter to the doctor until January 14. Once it was determined that V.D. was most likely injured intentionally, appellant became argumentative and

11

denied that her husband could have been responsible, creating various excuses for V.D.'s injuries. Appellant protested her husband's culpability even after she was confronted with his confession to having intentionally injured the child.

Appellant also endangered the physical and emotional well-being of both V.D. and F.D. during her supervised visits with the children at the Department after they were removed and placed in foster care. Appellant would unnecessarily spank and slap F.D. On one occasion, to prevent F.D. from climbing up onto a small table, appellant pulled him down by the leg, causing F.D. to hit his head. Appellant chastised F.D. for having caused V.D.'s injuries and Duarte's time in jail. Appellant also called her children "brats." Appellant deliberately ignored feeding instructions for V.D., giving her juice on several occasions instead of a special formula, as directed by the doctors. This resulted in V.D. vomiting excessively during one visit.

The evidence factually and legally supports a finding that the physical or emotional well-being of the children was endangered by appellant's conduct or omissions or the environment in which appellant placed them. This finding alone is not sufficient to terminate parental rights; termination must also be in the best interest of the children. Tex. Fam. Code Ann. § 161.001(1), (2).

***Best Interest of the Children***

The Texas Supreme Court has recognized the following factors that may be considered in determining whether termination is in a child's best interest: (1) desires of the children; (2) emotional and physical needs of the children now and in the future; (3) emotional and physical danger to the children now and in the future; (4) parental abilities of the individuals seeking custody; (5) programs available to assist these individuals to promote the best interest of the children; (6) plans

for the children by these individuals; (7) stability of the home or proposed placement; (8) acts or omissions of the parent; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 554 S.W.2d 367, 372 (Tex. 1976). This list of relevant considerations is not exhaustive; other factors may be considered when appropriate. *Leal*, 25 S.W.2d at 322. Likewise, a fact finder is not required to consider all of the listed factors. *Id.* Several *Holley* factors are raised by the record.

At the time of trial, V.D. and F.D. were too young to verbally express their desires. However, the children's behavior during scheduled visits with their mother suggests that neither child bonded to appellant. This same evidence also strongly indicates that appellant did not meet the emotional needs of the children. F.D. showed no emotion upon seeing his mother and would crawl out of the room instead of to his mother when he became upset. Witnesses indicated that appellant made no efforts to console F.D. on such occasions, but instead claimed that he was an independent baby. The testimony also suggests that appellant would not be able to fully meet the physical needs of her children. For example, during one supervised visit, appellant allowed V.D. to remain in a wet diaper, ignoring both the cries of her daughter and the prompting of the caseworker to change the diaper. In addition, as previously noted, appellant did not use proper feeding habits with V.D. despite previous instructions.

Appellant's general state of denial is the primary indicator that the children faced and would continue to face endangerment to their physical and emotional well-being. The Department gave appellant several chances to improve her parenting skills and her attitude about the abuse through various parenting classes and counseling sessions; however, appellant showed no signs of

improvement. She continued to blame F.D. for V.D.'s injuries and failed to hold herself or Duarte accountable. In fact, appellant reported to counselors that she was the victim, not her children.

The evidence factually and legally supports a finding that termination was in the best interest of the children. Therefore, we cannot find that the trial court reversibly erred by terminating the parent-child relationship between appellant and her two children. We overrule appellant's first issue on appeal.

### *Excluded Testimony*

Appellant argues that the trial court erred when it excluded the testimony of Charles and Barbara Leverett, appellant's grandparents. Appellant did not designate Charles or Barbara Leverett as potential fact witnesses in response to the Department's request for disclosure. Appellant, instead, decided to call the Leveretts as witnesses after the trial began. The Department objected to the presentation of the Leveretts' testimony, and the trial court excluded the testimony. Appellant claims on appeal that under Texas Rule of Civil Procedure 193.6(a), the testimony should have been permitted because there was either good cause for not disclosing the witnesses sooner or that the Department did not suffer any unfair surprise. *See* Tex. R. Civ. P. 193.6. Rule 193.6 states:

> A party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence the material or information that was not timely disclosed, or offer the testimony of a witness (other than a named party) who was not timely identified, unless the court finds that: (1) there was good cause for the failure to timely make, amend, or supplement the discovery response; or (2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

*Id.*

Regardless of whether the Department suffered unfair surprise or whether appellant had good cause for the delay, the court should have admitted the testimony because the best interest of children was at stake. *See In re P.M.B.*, 2 S.W.3d 618, 624 (Tex. App.—Houston [14th Dist.] 1999, no pet.). The court stated in *In re P.M.B.* that "in determining issues regarding the conservatorship of, possession of, and access to a child, the court's primary consideration is always the best interest of the child. Compared to the best interest of the child, technical rules of pleading and practice are of little importance in determining child custody issues." *Id.* It is in the court's primary interest to have as much evidence before it as possible. *Id.* Therefore, the trial court should have allowed the testimony of the Leveretts.

Nonetheless, any error the trial court may have made was harmless in this case. Under Texas Rule of Appellate Procedure 44.1(a), "No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of . . . probably caused the rendition of an improper judgment." Tex. R. App. P. 44.1(a)(1). Therefore, reversal is not required if the testimony is merely cumulative and not controlling. *Mentis v. Barnard*, 870 S.W.2d 14, 16 (Tex. 1994).

Charles and Barbara Leverett were to testify about appellant's abilities as a parent and the condition of their household while appellant was living there with the children. Testimony by appellant's mother had already been heard in appellant's favor. Appellant's mother testified that appellant was a loving and caring mother. Appellant's mother also discussed the conditions of the Leveretts' home, refuting testimony that their home was inappropriate for the children. Finally, the Leveretts' testimony was not controlling because it only enlightened the jury on one of the *Holley*

15

factors considered by the jury: appellant's parenting abilities. The jury had evidence on the other *Holley* factors and endangerment issues upon which it could have based its decision. Therefore, the error of the trial court did not lead to the rendering of an improper judgement. We overrule appellant's second issue on appeal.

## CONCLUSION

We conclude that the evidence is legally and factually sufficient to determine that the children's physical and emotional well-being was endangered and that the termination was in the best interest of the children. Any error that the trial court may have made by excluding the testimony of the Leveretts was harmless. We, therefore, affirm the termination decree.

_____

David Puryear, Justice

Before Justices Kidd, B. A. Smith and Puryear

Affirmed

Filed: May 10, 2001

Do Not Publish