Opinion issued April 27, 2006









     






In The
Court of Appeals
For The
First District of Texas




NO. 01-05-00985-CV




NORMA JEAN REYNA, Appellant

V.

DEPARTMENT OF FAMILY & PROTECTIVE SERVICES, Appellee




On Appeal from the 314th District Court 
Harris County, Texas
Trial Court Cause No. 2004-04798J




MEMORANDUM OPINION 

          Following a bench trial, the trial court terminated the parental rights of
appellant, Norma Jean Reyna, to her minor child, A.E.R. Presenting four points of
error, appellant (1) contends that the trial court abused its discretion when it “refused
to accept the parties’ agreement that [the Department of Family and Protective
Services] would be appointed sole managing conservator” of A.E.R. without
terminating appellant’s parental rights; (2) challenges the legal and factual sufficiency
of the evidence to support a determination that appellant “engaged in conduct or
knowingly placed [A.E.R] with persons who engaged in conduct which endangers the
physical or emotional well-being of [A.E.R.]”;


 (3) challenges the legal and factual
sufficiency of the evidence to support a determination that appellant “failed to comply
with the provisions of a court order that specifically established the actions necessary
for [her] to obtain the return of [A.E.R.]”;


 and (4) asserts that the evidence was
legally and factually insufficient to support a determination that termination was in
A.E.R.’s best interest.



          We affirm. 
 
Background



          In January of 1999, the Department of Family and Protective Services (“the
Department”) received a report that appellant was manifesting bizarre and hostile
behaviors toward her three daughters, ages 13, 11, and 6. The oldest daughter, S.M.,
had left home asking for help. S.M. felt suicidal because appellant was verbally
tormenting her. S.M. reported that, on January 7, 1999, appellant had been
continually yelling at her for no reason. According to S.M., appellant frequently
“heard voices” and was hearing voices on that day. S.M., who had been sexually
molested by her father a couple of years earlier, reported that appellant blamed S.M.
for the molestation and tormented her by saying, “At least I did not get molested by
my dad.” 
          S.M. also reported that in late December 1999, appellant had grabbed her by
the hair, threw her to the floor, scratched her face, and left a mark on her arm. S.M.
stated that appellant often threatened to kill her. In addition, it was reported at that
time that appellant often went into “rages” and attacked her three daughters. 
Moreover, it was reported that, at some point in the past, appellant had stabbed her
11-year-old daughter in the hand, dropped her from a second story window, and hit
her on the head with a radio. 
          After an investigation, child protective services (“CPS”) concluded that (1)
S.M. felt suicidal due to appellant’s threats and hostility; (2) appellant exhibited
bizarre behavior and often attacked her daughters; and (3) the children were at risk
of serious injuries because appellant was violent and suffering from an untreated
mental illness. Based on appellant’s history of physical and emotional abuse, the
Department took custody of the girls. Psychological testing of appellant at that time
revealed a diagnosis of “paranoid personality disorder.” Permanent managing
conservatorship of appellant’s three oldest daughters was ultimately given to relatives
in 2001. 
          In February of 2003, appellant gave birth to another daughter, R.R. The
Department received a referral that R.R. was at risk for abuse based on appellant’s
history with regard to her three older daughters. Appellant would not allow the
Department caseworker to see R.R., and the police were called. Appellant assaulted
the responding police officer and spent one week in jail. 
          R.R. was initially placed with her father, Ricardo Lerma. The Department then
learned that, in 1985, Lerma had broken his step-son’s arm and bruised his eye,
resulting in Lerma’s being convicted of injury to a child. The Department also
learned that Lerma had several driving while intoxicated convictions and that R.R.
was actually living with a babysitter, not Lerma. The Department took custody of
R.R. and placed her in foster care when she was two months old. 
          In August 2003, the Department again referred appellant for a psychiatric
evaluation. The evaluation found appellant to have “personality disorder NOS with
borderline and passive aggressive traits.”
          On May 6, 2004, appellant gave birth to A.E.R. Lerma is also A.E.R.’s father.
The Department received a referral that the hospital was concerned about releasing 
A.E.R. to appellant. Appellant had been observed by the hospital staff acting
strangely with A.E.R. The hospital reported that A.E.R. had been born prematurely
and required oxygen. Appellant had been observed attempting to remove A.E.R.’s
oxygen mask and cuddling with the infant inappropriately. The Department
confirmed that appellant had a CPS history and an open case pending with regard to
R.R. The Department was given temporary managing conservatorship of A.E.R., and
she was placed in foster care. 
          Following a bench trial on July 30, 2004, the Department was given sole
managing conservatorship of R.R. without terminating appellant’s parental rights. 
          This case was tried to the bench on September 8, 2005. At the end of trial, the
trial court orally found that appellant’s parental rights to A.E.R. should be terminated
pursuant to Family Code sections 161.001(1)(E) and 161.001(1)(O) and that such
termination was in A.E.R.’s best interest. The trial court filed findings of fact and
conclusions of law at appellant’s request. The trial court made “findings” that clear
and convincing evidence was presented that (1) appellant had “engaged in conduct
or knowingly placed [A.E.R] with persons who engaged in conduct which endangers
the physical or emotional well-being of [A.E.R.]”; (2) appellant “failed to comply
with the provisions of a court order that specifically established the actions necessary
for the mother to obtain the return of [A.E.R.],” and (3) “it is in the best interest of
[A.E.R.] that she be placed in the sole managing conservatorship of [the
Department]” because “appointment of the parents as managing conservator would
not be in the best interest of the child because appointment would significantly impair
[A.E.R.’s] physical or emotional development and it would not be in the interest of
the child to appoint a relative or another person as managing conservator.” The trial
court concluded that appellant’s parental rights to A.E.R. should be terminated.



The Agreement
          In her first point of error, appellant contends, “The trial court abused its
discretion when it refused to accept the parties’ agreement that [the Department]
would be appointed sole managing conservator of [A.E.R.] without termination of
parental rights.” 
          Rule 38.1(h) of the Texas Rules of Appellate Procedure provides that an
appellant’s brief “must contain a clear and concise argument for the contentions
made, with appropriate citations to authorities and to the record.” Tex. R. App. P.
38.1(h). Here, appellant does not provide cogent legal analysis, properly discuss
governing legal authority, or reference the record in support of her specific
contention. See McIntyre v. Wilson, 50 S.W.3d 674, 682 (Tex. App.—Dallas 2001,
pet. denied). Appellant appears to presume, without basis in the record, that the trial
court refused to accept the agreement based on Family Code section 263.404 and then
asserts that section 263.404’s provisions do not apply. See Tex. Fam. Code Ann.
§ 263.404 (Vernon 2002) (providing that court may render final order appointing the
Department as managing conservator of child without terminating rights of parent of 
child if court finds that appointment of parent as managing conservator would not be
in best interest of child, and it would not be in best interest of child to appoint 
relative of child or another person as managing conservator).
          Appellant makes a single assertion that the trial court overruled what was
“essentially . . . an agreement under Rule 11 of the Texas Rules of Civil Procedure.” 
Appellant does not, however, identify any document in the record constituting a Rule
11 agreement nor provide citation to the record to support her contention that a Rule
11 agreement existed. See Padilla v. La France, 907 S.W.2d 454, 460 (Tex. 1995)
(“A settlement agreement must comply with rule 11 to be enforceable.”). Moreover,
appellant does not identify the location in the record where the trial court’s ruling of
which she complains may be found. 
          Appellant claims that the trial court abused its discretion in rejecting what was
“essentially . . . an agreement under Rule 11.” See Chase Manhattan Bank v. Bowles,
52 S.W.3d 871, 881 (Tex. App.—Waco 2001, no pet.) (“A trial court’s ruling
regarding a Rule 11 agreement is reviewed for abuse of discretion.”). It is elemental
that an appellant has the burden to show that a trial court abused its discretion. See
Williams v. Moers, 240 S.W.2d 336, 342 (Tex. Civ. App.—Galveston 1951, writ ref’d
n.r.e.) (“It is not enough that we cannot see how the court’s exercise of discretion can
be justified. We must be able to see that it cannot be justified.”). Here, appellant
does not refer to any case authority to support her contention that the trial court
abused its discretion. Appellant also does not describe how the trial court’s alleged
rejection of a claimed “Rule 11” agreement, implicitly dismissing the Department’s
termination claim and determining conservatorship, constituted an abuse of
discretion, other than to suggest that the trial court failed to consider properly the best
interests of A.E.R. Yet, she does not show where the record supports such a
suggestion, nor does she demonstrate how the trial court acted without reference to
any guiding rules and principles. Rather, as we address in our sufficiency-of-the-evidence review, the trial court found that termination was in the best interest of
A.E.R. 
          Moreover, as pointed out by the Department, Family Code section 161.203
provides that a suit to terminate “may not be dismissed nor may a nonsuit be taken
unless the dismissal or nonsuit is approved by the court.” Tex. Fam. Code Ann.
§ 161.203 (Vernon 2002). The agreement claimed by appellant effectively served to
dismiss or nonsuit the Department’s suit to terminate appellant’s parental rights. 
Appellant does not address why section 161.203 did not vest the trial court with
authority to disapprove of the agreement. 
          We overrule appellant’s first point of error. 
Sufficiency of the Evidence
          In her second point of error, appellant contends that the evidence is legally and
factually insufficient to support a determination by the trial court, under Family Code
section 161.001(1)(E), that appellant “engaged in conduct or knowingly placed
[A.E.R] with persons who engaged in conduct which endangers the physical or
emotional well-being of [A.E.R.].” See Tex. Fam. Code Ann. § 161.001(1)(E)
(Vernon Supp. 2005).
 
A.      Burden of Proof and Standard of Review
          The burden of proof at trial in parental-termination cases is by clear and
convincing evidence. Tex. Fam. Code Ann. § 161.001 (Vernon Supp. 2005); In re
J.F.C., 96 S.W.3d 256, 263 (Tex. 2002). Section 161.001 of the Texas Family Code
provides the method by which a court may involuntarily terminate the parent–child
relationship. See Tex. Fam. Code. Ann. § 161.001. Under this section, a court may
order the termination of the parent–child relationship if the court finds, by clear and
convincing evidence, that (1) one or more of the acts enumerated in section
161.001(1) was committed and (2) termination is in the best interest of the child. Id. 
“Clear and convincing evidence” means the measure or degree of proof that will
produce in the mind of the trier of fact a firm belief or conviction as to the truth of the
allegations sought to be established. Tex. Fam. Code. Ann. § 101.007 (Vernon
2002); J.F.C., 96 S.W.3d at 264. This heightened burden of proof results in a
heightened standard of review.
          When determining legal sufficiency, we review all the evidence in the light
most favorable to the finding “to determine whether a reasonable trier of fact could
have formed a firm belief or conviction that its finding was true.” J.F.C., 96 S.W.3d
at 266. To give appropriate deference to the factfinder’s conclusions, we must
assume that the factfinder resolved disputed facts in favor of its finding if a
reasonable factfinder could do so. Id. We disregard all evidence that a reasonable
factfinder could have disbelieved or found to have been incredible. Id. This does not
mean that we must disregard all evidence that does not support the finding. Id. 
Disregarding undisputed facts that do not support the finding could skew the analysis
of whether there is clear and convincing evidence. Id. Therefore, in conducting a
legal-sufficiency review in a parental-termination case, we must consider all of the
evidence, not only that which favors the verdict. See City of Keller v. Wilson, 168
S.W.3d 802, 817 (Tex. 2005).
          In determining a factual-sufficiency point, the higher burden of proof in
termination cases also alters the appellate standard of review. In re C.H., 89 S.W.3d
17, 26 (Tex. 2002). “[A] finding that must be based on clear and convincing evidence
cannot be viewed on appeal the same as one that may be sustained on a mere
preponderance.” Id. at 25. In considering whether evidence rises to the level of being
clear and convincing, we must consider whether the evidence is sufficient to produce
in the mind of the factfinder a firm belief or conviction as to the truth of the allegation
sought to be established. Id. We consider whether disputed evidence is such that a
reasonable factfinder could not have resolved that disputed evidence in favor of its
finding. J.F.C., 96 S.W.3d at 266. “If, in light of the entire record, the disputed
evidence that a reasonable factfinder could not have credited in favor of the finding
is so significant that a factfinder could not reasonably have formed a firm belief or
conviction, then the evidence is factually insufficient.” Id.
          The natural rights that exist between parents and their children are of
constitutional dimension. Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985). 
Therefore, termination proceedings should be strictly scrutinized, and the involuntary
termination statutes should be strictly construed in favor of the parent. Id. at 20–21. 
However, “[j]ust as it is imperative for courts to recognize the constitutional
underpinnings of the parent-child relationship, it is also essential that emotional and
physical interests of the child not be sacrificed merely to preserve that right.” C.H.,
89 S.W.3d at 26.
B.      Endangerment Through Course of Conduct: Section 161.001(1)(E)
          One of the grounds pled by the Department for terminating appellant’s parental
rights was Family Code section 161.001(1)(E). The trial court made a finding of fact
tracking the language of section 161.001(1)(E). This subsection provides that a court
may terminate the parent-child relationship if the court finds by clear and convincing
evidence that the parent has engaged in conduct or knowingly placed the child with
persons who engaged in conduct that endangers the physical or emotional well-being
of the child. Tex. Fam. Code Ann. § 161.001(1)(E). 
          Within the context of section 161.001(1)(E), “endanger” means to expose a
child to loss or injury or to jeopardize a child’s emotional or physical health. Tex.
Dep’t of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987). The danger to a
child must arise solely from the parent’s conduct as established by the parent’s
actions or by the parent’s failure to act. See Robinson v. Tex. Dep’t of Protective &
Regulatory Servs., 89 S.W.3d 679, 688 (Tex. App.—Houston [1st Dist.] 2002, no
pet.). Although “endanger” means more than a “threat of metaphysical injury or the
ill effects of a dysfunctional family,” it does not require that the conduct be actually
directed at a child or that a child suffer an actual injury. Boyd, 727 S.W.2d at 533. 
That is, the conduct does not have to constitute a concrete threat of injury to the child. 
In re M.J.M.L., 31 S.W.3d 347, 350 (Tex. App.—San Antonio 2000, pet. denied). 
The conduct does not have to occur in the presence of the child. Director of Dallas
County Child Protective Servs. v. Bowling, 833 S.W.2d 730, 733 (Tex. App.—Dallas
1992, no writ). And the conduct may occur before the child’s birth and both before
and after the child has been removed by the Department. In re S.M.L.D., 150 S.W.3d
754, 757–58 (Tex. App.—Amarillo 2004, no pet.). 
          Termination under section 161.001(1)(E) typically requires evidence of more
than a single act or omission. In re D .T., 34 S.W.3d 625, 634 (Tex. App.—Fort
Worth 2000, pet. denied). Endangerment may be satisfied by showing that a parent
engaged in a “course of conduct” that endangered the child’s physical or emotional
well-being. In re U.P., 105 S.W.3d 222, 233 (Tex. App.—Houston [14th Dist.] 2003,
pet. denied).
          A parent’s past endangering conduct may create an inference that the parent’s
past conduct may recur and further jeopardize a child’s present or future physical or
emotional well-being. See In re D.M., 58 S.W.3d 801, 812 (Tex. App.—Fort Worth
2001, no pet.). Particularly relevant to this case, the manner in which a parent treats
other children in the family can be considered in deciding whether that parent
engaged in a course of conduct that endangered the physical or emotional well-being
of a child. See, e.g., In re D.L.N., 958 S.W.2d 934, 939 (Tex. App.—Waco 1997, pet.
denied) (concluding that jurors could consider evidence showing how parent treated
child’s two sisters in deciding if parent engaged in course of conduct that endangered
physical or emotional well-being of subject child), disapproved on other grounds by
J.F.C., 96 S.W.3d at 267 and C.H., 89 S.W.3d at 26. This is true even though the
cited conduct occurred before the birth of the subject child. See, e.g., Navarrette v.
Tex. Dep’t of Human Resources, 669 S.W.2d 849, 850 (Tex. App.—El Paso 1984, no
writ) (upholding termination of parental rights over child taken into custody from
hospital after birth, even though child was not subjected to deplorable living
conditions of six siblings). 
          The Department’s case file regarding appellant’s four older children and A.E.R.
was admitted into evidence at trial without objection. The file demonstrated appellant
had engaged in past violent and abusive conduct. As discussed, the Department
received a report in 1999 that appellant’s oldest daughter, S.M., was contemplating
suicide because of appellant’s verbal abuse, which included tormenting S.M.
regarding S.M.’s earlier sexual abuse by her father. Appellant had also physically
assaulted S.M. and had threatened to kill her on many occasions. 
          The Department’s intake report from January 1999 indicates that appellant had
in the past attacked her three daughters on a regular basis. The case file also revealed
that, at some point before the January 1999 report was made, appellant had stabbed
her 11-year-old daughter in the hand, dropped her from a second story window, and
hit her on the head with a radio. 
          Appellant points out that the record does not reflect that she was ever charged
with a criminal offense for her treatment of her three oldest daughters and that her
parental rights were not terminated with regard to those children. Appellant is
correct; however, the record does indicate that the Department concluded in 1999 that
appellant’s three oldest daughters were at risk of serious injuries because appellant
was violent. This was not only the conclusion of the Department but also of a doctor
at Intracare Hospital who attempted to work with the family at that time. The doctor
reported that appellant was uncooperative with services and “acted out” at the
hospital. The doctor and a unit supervisor at the hospital informed the Department
that the children were at immediate risk of harm by appellant.
          The record shows that appellant’s three oldest daughters were removed from
appellant’s custody at that time and placed with an aunt and uncle. In 2001, relatives
were given permanent managing conservatorship of the girls. 
          Moreover, appellant again exhibited violent behavior in 2003, following R.R.’s
birth, when she assaulted the police officer who was called to assist the Department’s
caseworker to check on R.R.’s well-being. The record indicates that appellant hit and
bit the officer.
          These were all facts for the trial court, as factfinder, to have weighed and
considered. From appellant’s abuse of her three oldest daughters and her subsequent
assault on a police officer, the trial court could have inferred that (1) appellant had
engaged in course of conduct that endangered physical or emotional well-being of
A.E.R., (2) appellant would continue her pattern of abusive behavior, and (3) A.E.R.
would face abuse if placed in appellant’s care. See D.L.N., 958 S.W.2d at 939 (“From
Bowden’s neglect of her other two children who lived with her, the jury could infer
that D.L.N. was similarly treated before she came to live with the Dotsons, while
visiting with Bowden, and that D.L.N. would face this type of treatment in the future
if returned to Bowden’s care.”); see also In re T.L.S., 170 S.W.3d 164, 166 (Tex.
App.—Waco 2005, no pet.) (recognizing that “[d]uring the last decade, a principle
has emerged in parental termination and child custody cases which recognizes that
evidence that a parent has engaged in abusive or neglectful conduct in the past
permits an inference that the parent will continue this behavior in the future”). 
          Appellant also points out that the record does not show any injury to either
R.R. or A.E.R. as a result of appellant’s conduct. Nevertheless, for parental conduct
to constitute endangerment of a child’s well-being, it is not necessary that the conduct
be directed at the child or that the child actually suffer injury; rather, it is sufficient
that the child’s well-being be jeopardized or exposed to loss or injury. Boyd, 727
S.W.2d at 533. The specific danger to the child’s well-being need not be established
as an independent proposition, but may instead be inferred from parental misconduct. 
Id. A showing of a causal connection between the parent’s conduct and any resultant
injury or adverse effect to the child is not required. Id.; see In re W.A.B., 979 S.W.2d
804, 807 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) (concluding that
section 161.001(1)(E) does not require causal connection between parent’s
misconduct and actual harm to child resulting from that misconduct; noting that
“endanger” has been interpreted by the Supreme Court of Texas to mean to expose
to loss or injury or to jeopardize); In re R.D., 955 S.W.2d 364, 368 (Tex. App.—San
Antonio 1997, pet. denied) (recognizing that section 161.001(1)(E) does not require
showing that parental conduct caused actual injury to child). Thus, even though no
causal connection was established between appellant’s actions and an actual injury
to A.E.R., the trial court could have inferred that appellant’s conduct exposed A.E.R.
to injury and placed her in jeopardy, i.e., endangered A.E.R.’s physical well-being. 
The trial court could have further reasoned that, if she was placed in appellant’s care,
A.E.R.’s physical and emotional welfare would be at risk, given appellant’s past
conduct. 
          Such inference was also supported by the testimony of Nicole Newsome, the
Department caseworker assigned to A.E.R.’s case. Newsome testified that she had
been informed by the hospital following A.E.R.’s birth that appellant was acting
strangely with A.E.R. It was reported that appellant had attempted to remove an
oxygen mask from prematurely born A.E.R. and was cuddling inappropriately with
her. With regard to her conduct at the hospital, appellant contends that “[t]here is
nothing to suggest that Appellant wasn’t just nervous, just trying to soothe the baby
or adjust the oxygen cap to fit better.” However, given appellant’s history of abuse,
it would have been reasonable for the trial court to have inferred that appellant’s
actions in the hospital were part of a continuing course of conduct of endangerment.
          The trial court also heard evidence that appellant continued a relationship with
Lerma despite the fact that he had assaulted her when she was pregnant with A.E.R.
and had a criminal history, including a conviction for injury to a child. 
          Appellant testified that, when she was pregnant with A.E.R., Lerma had
slammed the car door on her stomach. Appellant testified that this occurred when she
was attempting to prevent Lerma from leaving with his daughter because Lerma was
drunk. According to appellant, Lerma had also kicked and hit her in the stomach
while she was pregnant and then had laughed. Appellant also testified that Lerma at
one time had gotten drunk and destroyed her property.
          In her brief, appellant asserts, “Appellant exercised poor judgment when she
stayed with [Lerma] for one month due to his admitted violent nature, but the record
shows that she presently does not live with him or associate with him to any degree
which would expose herself or her children to danger.” Despite her assertion,
appellant testified that she had seen Lerma two weeks before trial. Prior to that,
Lerma had been living with appellant and her mother for three weeks. The record
also reflects that, at the time of trial, appellant was three weeks from delivering her
sixth child. Appellant testified that Lerma was also the father of that baby. Appellant
admitted that the sexual relations between her and Lerma resulting in that pregnancy
had been consensual. The trial court also could have considered appellant’s
continued relationship with Lerma in concluding that the placement of A.E.R. with
appellant would endanger her well-being. See Sylvia M. v. Dallas County Welfare
Unit, 771 S.W.2d 198, 204 (Tex. App.—Dallas 1989, no writ) (considering “volatile
and chaotic” marriage, altercation during pregnancy, and mother’s repeated
reconciliation with abusive spouse in upholding termination of parental rights).
          Additionally, the trial court could have considered appellant’s mental state. In
cases in which a parent’s mental state allows her to engage in conduct that endangers
the physical or emotional well-being of the child, that conduct has bearing on the
advisability of terminating the parent’s rights. In re J.I.T.P., 99 S.W.3d 841, 845
(Tex. App.—Houston [14th Dist.] 2003, no pet.); In re C.D., 664 S.W.2d 851, 853
(Tex. App.—Fort Worth 1984, no writ). The intake report found in the Department’s
case file for the 1999 incident indicated that appellant’s daughters reported that
appellant would “hear voices” on a regular basis and “would talk to people who were
not present.” The Department stated in its 1999 conclusion that the children were at
risk for serious injuries because appellant was violent and had “an untreated mental
illness.” Appellant’s 1999 psychological evaluation included a diagnosis of
“paranoid personality disorder.” A 2003 evaluation revealed a diagnosis of
“personality disorder NOS with borderline and passive aggressive traits.”
          At trial, caseworker Newsome told the trial court that appellant exhibited “a lot
of paranoia,” particularly during her scheduled visitations with A.E.R. After
changing A.E.R.’s diaper, appellant had claimed that she believed that A.E.R. had
been sexually abused because A.E.R.’s bottom was red and irritated. Newsome
testified that she had checked A.E.R. and found no indication that A.E.R. had been
abused. Appellant also claimed that A.E.R. had ant bites, sores, and lumps. 
Newsome stated that she never saw any of the marks on A.E.R. that appellant
claimed.
          We conclude that the evidence, viewed in the light most favorable to a finding
of endangerment, was sufficiently clear and convincing that a reasonable factfinder
could have formed a firm belief or conviction that appellant engaged in conduct that
endangered A.E.R.’s physical or emotional welfare. We further conclude that,
viewed in light of the entire record, any disputed evidence could have been reconciled
in favor of the trial court’s endangerment determination or was not so significant that
the trial court could not reasonably have formed a firm belief or conviction that
appellant engaged in conduct that endangered the children’s physical or emotional
welfare. Accordingly, we hold that the evidence was legally and factually sufficient
to support the endangerment finding.
          We overrule appellant’s second point of error.



C.      Best Interest of A.E.R.
          In her fourth issue, appellant challenges the legal and factual sufficiency of the
evidence to support the trial court’s required finding that termination would be in the
children’s best interest. See Tex. Fam. Code Ann. § 161.001(2) (Vernon Supp.
2005). Some of the factors that an appellate court may consider in ascertaining the
best interest of a child include the non-exhaustive list set forth in Holley v. Adams. 
544 S.W.2d 367, 371–72 (Tex. 1976). Those factors include the following: (1) the
desires of the child; (2) the emotional and physical needs of the child now and in the
future; (3) the emotional and physical danger to the child now and in the future; (4)
the parental abilities of the individuals seeking custody; (5) the programs available
to assist these individuals to promote the best interest of the child; (6) the plans for
the child by these individuals or by the agency seeking custody; (7) the stability of
the home or proposed placement; (8) the acts or omissions of the parent that may
indicate that the existing parent-child relationship is not a proper one; and (9) any
excuse for the acts or omissions of the parent. Id. 
          These factors are not exhaustive. C.H., 89 S.W.3d at 27. The absence of
evidence about some of these factors does not preclude a factfinder from reasonably
forming a strong conviction or belief that termination is in the child’s best interest. 
Id. “Best interest” does not require proof of any unique set of factors, nor does it
limit proof to any specific factors. Holley, 544 S.W.2d at 371–72. With the
foregoing legal precepts in mind, we review the legal and factual sufficiency of the
evidence to support the trial court’s finding that termination was in the children’s best
interest. 
          We agree with the Department that the evidence discussed above that supports
the endangerment determination is also probative of whether termination of
appellant’s parental rights is in A.E.R.’s best interest. See C.H., 89 S.W.3d at 28. 
That is, the evidence showing appellant’s history of violent conduct, her continued
relationship with Lerma, and her untreated mental health disorders that manifested
as abusive and violent behaviors also support the trial court’s best-interest finding.
          At trial, the evidence showed that A.E.R. was living in a foster home with her
sister, R.R. The guardian ad litem informed the trial court that she believed it was in 
A.E.R.’s best interest that appellant’s parental rights be terminated because appellant
was not able to provide A.E.R. with a safe and stable home. The guardian ad litem
informed the trial court that A.E.R. should remain in her current foster placement
because the home was meeting all of her physical and emotional needs and allowed
her to be placed with her sister, R.R. 
          Evidence was also presented that, though born prematurely, A.E.R. was
developmentally on target and had no special needs. At the time of trial, A.E.R. was
16 months old. Newsome testified that A.E.R. had been in her current foster home
since she was a newborn. Newsome also told the court that A.E.R. was “very
bonded” with her foster mother and that the foster mother wanted to adopt A.E.R. No
evidence was presented regarding the degree of bonding between appellant and
A.E.R.
          The record shows that appellant was living with her mother. The Department’s
case file indicated that appellant’s mother had a history of mental illness and had
reportedly abused appellant as a child. Appellant testified that she plans to move out
of her mother’s house but had not applied for housing. 
          According to appellant, she was not able to work because of her pregnancy and
had been placed on “bed rest.” Appellant stated that she had last worked at a
temporary, seasonal job the previous Christmas at a department store. Appellant
testified that she was receiving food stamps and WIC. She stated that she received
$238 in spousal support from her ex-husband and anticipated that in one month she
would begin receiving $2,500 a month from her ex-husband’s retirement account.
Appellant testified that she was entitled to the retirement and needed to hire an
attorney to assist her in getting her share. Appellant told the trial court that, if A.E.R.
were returned to her, she planned to hire a nanny. Appellant stated that “work force”
told her that they would help her pay for a nanny.
          Evidence was presented that, under her service plan, appellant was required to
participate in psychological testing. The evidence showed that appellant did not
undergo the testing; however, Newsome testified that the Department was unable to
get funding for appellant’s testing. Evidence was also presented that appellant missed
six scheduled visits with A.E.R. The caseworker testified that she assumed that it was
because appellant was pregnant with her sixth child but also stated that appellant had
never provided an explanation for the missed visits.
          In sum, given the evidence, the trial court could have reasonably inferred that
A.E.R. was at risk for neglect and abuse should she be placed with appellant and that
appellant could not provide her with a stable home. We conclude that the evidence,
viewed in the light most favorable to the best-interest finding, was sufficiently clear
and convincing that a reasonable fact finder could have formed a firm belief or
conviction that termination of the parent-child relationship between appellant and
A.E.R. was in A.E.R.’s best interest. We further conclude that, viewed in light of the
entire record, any disputed evidence could have been reconciled in favor of the trial
court’s finding that termination of the parent-child relationship between appellant and
A.E.R. was in A.E.R.’s best interest or was not so significant that the trial court could
not reasonably have formed a firm belief or conviction that termination was in
A.E.R.’s best interest. Thus, we hold that the evidence was legally and factually
sufficient to support such finding.
          We overrule appellant’s fourth point of error.
Conclusion
          We affirm the judgment of the trial court.




                                                   Laura Carter Higley
                                                   Justice

Panel consists of Justices Taft, Higley, and Bland.