Opinion issued November 15, 2007













In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-07-00160-CV
  __________
 

IN THE INTEREST OF A.A.A. 
 
On Appeal from the 314th District Court
Harris County, Texas
Trial Court Cause No. 2006-00760J
 

 
 
O P I N I O N
          In this accelerated appeal, Shde Aza Hurst challenges the trial court’s judgment
terminating her parental rights to her minor child, A.A.A., and naming the Texas
Department of Family and Protective Services (“DFPS”) as A.A.A.’s sole managing
conservator. In five issues, Hurst argues that the evidence is legally and factually
insufficient to support the trial court’s findings under Section 161.001. Tex. Fam.
Code Ann. § 161.001 (Vernon Supp. 2006). In her sixth issue, Hurst asserts that, if
we reverse the trial court’s termination of her parental rights, we should also reverse
the trial court’s appointment of DFPS as sole managing conservator. We reverse the
trial court’s termination of her parental rights and render judgment denying DFPS’s
petition to terminate Hurst’s parental rights. We affirm the trial court’s appointment
of DFPS as A.A.A.’s sole managing conservator.
Background
          A.A.A. was born April 13, 2005. During the summer of 2005, her mother, Shde
Hurst, was living in Louisiana with her boyfriend, Paul Alexander. Alexander claims
that he is A.A.A.’s father, although DNA test results were not available at trial. In
September 2005, Hurst ended her relationship with Alexander, after living with him
for six months, and she and A.A.A. moved to a Houston shelter. After arriving at the
shelter, Hurst worked at McDonald’s for about one month and also began attending
night school. 
          On January 24, 2006, Hurst left eight-month-old A.A.A. at the shelter and went
to Wal-Mart. While at Wal-Mart, Hurst was arrested for shoplifting and spent two
days in a Harris County jail. Hurst claims that she was shoplifting cough medicine
because A.A.A. was sick. When Hurst did not return to the shelter, shelter officials
notified DFPS about the neglectful supervision of A.A.A. DFPS attempted to reach
the contacts on Hurst’s emergency list, but, when no one on the emergency list could
be reached, A.A.A. was taken into DFPS care. Two days later, the trial court named
DFPS as A.A.A.’s temporary managing conservator. DFPS initially placed A.A.A. in
foster care, but in May 2006, A.A.A. was moved to Hurst’s relative. This relative has
expressed an interest in adopting A.A.A.
          Hurst did not learn that A.A.A. had been removed until after she was released
from jail on January 25. After being released, Hurst moved to another shelter in
Pasadena, Texas, for a few weeks, and then moved in with a friend in Houston until
sometime in June. Hurst claimed that she worked at McDonald’s during this period,
although A.A.A.’s guardian ad litem testified that Hurst told her she had been working
at the McDonald’s for about three weeks as of June 1. 
          In June, Hurst moved back to Louisiana where she moved back and forth
between Alexander and her sick mother, whom she assisted. Once back in Louisiana,
Hurst stated that she babysat two children, ages seven and nine, for around seven
months and was making about $300 every two weeks. A.A.A. remained in Texas with
Hurst’s relative. At the time of trial, Hurst testified that she was currently living with
Alexander at an apartment in Lake Charles, where she planned on staying and where
she has daycare for A.A.A. She also stated that she was working at a Citgo gas station
making $7.25 an hour. 
          A family service plan was implemented, which outlined the services Hurst was
to complete in order to be reunited with A.A.A. Hurst signed this plan on March 9,
and, on March 23, the trial court ordered Hurst to comply with the plan. Brandi
Sewell-Hall, the appointed caseworker on A.A.A.’s case from January 2006 until
December 2006, testified that, while DFPS tried to help her to complete her services,
Hurst failed to comply with the services outlined in the plan, except for completing a
psychological evaluation. Hall also stated that, during the year she was the assigned
caseworker, Hurst only visited A.A.A. two times, even though she could have visited
twice a month while A.A.A. was in foster care, and even more often once Hurst’s
relative had custody of A.A.A. Hurst testified that she left a message on Hall’s
answering machine indicating that she was moving to Louisiana. Hall, however,
stated that she does not remember such a message. 
          Elizabeth Bolling, the assigned caseworker from January 19, 2007 until the time
of trial, testified that Hurst had only seen A.A.A. once during that time. Bolling stated
that it is in A.A.A.’s best interest to remain with Hurst’s relative. A.A.A.’s guardian
ad litem testified that A.A.A. had bonded with Hurst’s relative and was thriving in her
current environment.
          Hurst testified that her failure to comply with the family service plan was due
to transportation problems and the unavailability of parenting classes, although she
testified at trial that she made a choice not to catch the bus to attend the parenting
classes. She also testified that she completed the parenting classes days before trial
and just needed to pick up the certificate.
          Hurst testified that she visited A.A.A. six times before she moved back to
Louisiana. She also stated that she called A.A.A. every day after she moved to
Louisiana. Hurst claimed that she did not visit A.A.A. more frequently when A.A.A.
was in her relative’s care, because she believed she could only visit A.A.A. at the CPS
office. Bolling confirmed that Hurst had stated that she believed all visits with A.A.A.
were to be at the CPS office. While Hurst admitted that she did not provide financial
support for A.A.A. after she was taken into DFPS care, Hurst testified that she brought
clothing and shoes to the CPS office approximately six times.
          DFPS petitioned to have Hurst’s parental rights terminated on January 26, 2006. 
Permanency hearings occurred on July 27 and November 14, 2006, and on February
6, 2007. A bench trial occurred on DFPS’s parental-termination suit on February 6,
2007, and, on February 27, the trial court signed a judgment terminating Hurst’s and
Alexander’s parent-child relationship with A.A.A. and appointing DFPS as A.A.A.’s
sole managing conservator.  
Sufficiency
          In issues one through five, Hurst challenges the trial court’s termination of her
parental rights because the evidence is legally and factually insufficient to support (1)
the termination of her parental rights pursuant to Texas Family Code Section
161.001(1)(E), (F), (N), and (O) and (2) the trial court’s finding that termination was
in the best interest of the child pursuant Section 161.001(2). 
Standard of Review
          Because parental-rights termination “is complete, final, irrevocable, and divests
for all time that natural right . . . [,] the evidence in support of termination must be
clear and convincing before a court may involuntarily terminate a parent’s rights.”
Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985) (citing Santosky v. Kramer, 455 U.S.
745, 747, 102 S. Ct. 1388, 1391 (1982); Richardson v. Green, 677 S.W.2d 497, 500
(Tex. 1984)). “‘Clear and convincing evidence’ means the measure or degree of proof
that will produce in the mind of the trier of fact a firm belief or conviction as to the
truth of the allegations sought to be established.” Tex. Fam. Code. Ann. § 101.007
(Vernon 2002). This heightened burden of proof results in a heightened standard of
review. 
          When determining legal sufficiency, we review “all the evidence in the light
most favorable to the finding to determine whether a reasonable trier of fact could
have formed a firm belief or conviction that its finding was true.” In re J.F.C., 96
S.W.3d 256, 266 (Tex. 2002). To give appropriate deference to the factfinder’s
conclusions, we must assume that the factfinder resolved disputed facts in favor of its
finding if a reasonable factfinder could do so. Id. We disregard all evidence that a
reasonable factfinder could have disbelieved or found to have been incredible. Id. 
This does not mean that we must disregard all evidence that does not support the
finding. Id. Disregarding undisputed facts that do not support the finding could skew
the analysis of whether there is clear and convincing evidence. Id. Therefore, in
conducting a legal-sufficiency review in a parental-termination case, we must consider
all of the evidence, not only that which favors the verdict. See City of Keller v.
Wilson, 168 S.W.3d 802, 817 (Tex. 2005). 
          In determining factual sufficiency under the clear and convincing burden, we
must consider whether the evidence is sufficient to produce in the mind of the
factfinder a firm belief or conviction as to the truth of the allegation sought to be
established. In re C.H., 89 S.W.3d 17, 26 (Tex. 2002). We consider whether disputed
evidence is such that a reasonable factfinder could not have resolved that disputed
evidence in favor of its finding. J.F.C., 96 S.W.3d at 266. “If, in light of the entire
record, the disputed evidence that a reasonable factfinder could not have credited in
favor of the finding is so significant that a factfinder could not reasonably have formed
a firm belief or conviction, then the evidence is factually insufficient.” Id.
          The natural rights that exist between parents and their children are of
constitutional dimension. Holick, 685 S.W.2d at 20. Therefore, termination
proceedings should be strictly scrutinized, and the involuntary termination statutes
should be strictly construed in favor of the parent. Id. at 20–21. However, “[j]ust as
it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child
not be sacrificed merely to preserve that right.” C.H., 89 S.W.3d at 26.
Grounds for Termination
          In a proceeding to terminate the parent-child relationship brought under Section
161.001 of the Texas Family Code, the petitioner must establish, by clear and
convincing evidence, one or more of the acts or omissions enumerated under
Subsection (1) of 161.001 and that termination is in the best interest of the child under
Subsection (2). Tex. Fam. Code Ann. § 161.001. Both elements must be established,
and termination may not be based solely on the factfinder’s determination of best
interest of the child. Tex. Dep’t of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex.
1987).
          Here, in terminating Hurst’s parental relationship with A.A.A., the trial court
expressly found that Hurst: 
∙        engaged in conduct or knowingly placed the child at issue in this
suit with persons who engaged in conduct which endangers the
child’s physical or emotional well-being, pursuant to [Section]
161.001(1)(E); 

∙        failed to support the child in accordance with her ability during a
period of one year ending within six months of the date of the
filing of the petition, pursuant to Section 161.001(1)(F); 

∙        constructively abandoned the child at issue in this suit . . . pursuant
to Section 161.001(1)(N); 

∙        failed to comply with the provisions of a court order that
specifically established the actions necessary for her to obtain the
return of the child . . . pursuant to Section 161.001(1)(O); and 

∙        that termination of parental rights of . . . Hurst . . . is in the best
interest of the child.

In her first five issues, Hurst challenges the legal and factual sufficiency of these
findings. 
          A. Endangerment
          We begin by considering the legal sufficiency of the trial court’s 161.001(1)(E)
finding. To terminate a parent-child relationship based on 161.001(1)(E), the trial
court must find by clear and convincing evidence that the parent “engaged in conduct
or knowingly placed the child with persons who engaged in conduct which endangers
the physical or emotional well-being of the child.” Tex. Fam. Code. Ann. §
161.001(1)(E). “Endanger” means to expose to loss or injury or to jeopardize. Tex.
Dep’t of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987); In re J.T.G., 121
S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). The term means “more than
a threat of metaphysical injury or the possible ill effects of a less-than-ideal family
environment.” Boyd, 727 S.W.2d at 533. However, it is not necessary that the
conduct be directed at the child or that the child actually suffer injury. Id. The
specific danger to the child’s well-being may be inferred from parental misconduct
standing alone. Id. “The relevant inquiry is whether evidence exists that the
endangerment of the child’s physical [or emotional] well being was the direct result
of the parent’s conduct, including acts, omissions, or failures to act,” and termination
under this section “must be based on more than a single act or omission.” J.T.G., 121
S.W.3d at 125. Rather, “a voluntary, deliberate, and conscious course of conduct by
the parent is required.” Id. The conduct does not have to occur in the presence of the
child. Director of Dallas Cty. Child Protective Servs. v. Bowling, 833 S.W.2d 730,
733 (Tex. App.—Dallas 1992, no writ). And the conduct may occur before the child’s
birth and both before and after the child has been removed by the Department. In re
S.M.L.D., 150 S.W.3d 754, 757–58 (Tex. App.—Amarillo 2004, no pet.).
          Here, A.A.A. was taken into DFPS care after Hurst was arrested and held in jail
for two days. Criminal activity and incarceration can be considered in determining the
existence of a course of conduct which endangers a child’s well-being. See Harris v.
Herbers, 838 S.W.2d 938, 942 (Tex. App.—Houston [1st Dist.] 1992, no pet.). 
However, a single arrest, by itself, does not give rise to a course of conduct. Cf. id.
(noting that “mere imprisonment will not, standing alone, constitute engaging in
conduct that endangers the physical or emotional well-being of the child”). Hurst’s
testimony that this was the only time she had ever been arrested was undisputed. 
Therefore, Hurst’s arrest was not enough, by itself, to support a finding of
endangerment.
          The remainder of the evidence produced by DFPS points to the instability of
Hurst’s questionable employment history, unstable living arrangements, failure to
complete the court-ordered family service plan, and failure to visit or financially
support A.A.A. while in DFPS custody. A failure to maintain stable housing or
employment is not enough by itself to support a finding of endangerment under
161.001(1)(E). See In re J.R., 171 S.W.3d 558, 578 (Tex. App.—Houston [14th Dist.]
2005, no pet.); Doyle v. Texas Dept. of Protective and Regulatory Services, 16 S.W.3d
390, 398 (Tex. App.—El Paso 2000, pet. denied). Furthermore, while it is undisputed
that Hurst failed to comply with all the provisions of her family service plan, DFPS
introduced no evidence that showed such a failure endangered the physical or
emotional well-being of A.A.A. Likewise, Hurst’s failure to provide financial support
to or regularly visit with A.A.A. once in DFPS custody was not shown to have
endangered A.A.A. We hold that the evidence, even when viewed in the light most
favorable to the finding, is legally insufficient to produce in the mind of the factfinder
a firm belief or conviction that Hurst engaged in conduct which endangers the physical
or emotional well-being of A.A.A. Because the evidence is legally insufficient, we
need not address Hurst’s factual sufficiency challenge. Therefore, we further hold that
the trial court erred in terminating Hurst’s parental rights on the grounds that she
violated 161.001(1)(E). 
          We sustain Hurst’s first issue. 
          B. Failure to Support
          Hurst also challenges the trial court’s termination under 161.001(1)(F), where
the trial court found that she “failed to support the child in accordance with the
parent’s ability during a period of one year ending within six months of the date of the
filing of the petition.” Tex. Fam. Code. Ann. § 161.001(1)(F). Because the petition
was filed January 26, 2006, DFPS had the burden of proving that Hurst failed to
support A.A.A. within her ability for a period of 12 months starting no earlier than
July 26, 2004 and ending on January 26, 2006. However, because A.A.A. was born
on April 13, 2005, which is less then a year before January 26, 2006, Hurst could not
have “failed to support” A.A.A. for a period of 12 months before DFPS filed its
petition. We hold that the evidence is legally insufficient to support the trial court’s
finding that Hurst violated161.001(1)(F), and thus, need not address Hurst’s factual
sufficiency challenge. We further hold that the trial court erred in terminating Hurst’s
parental rights on the grounds that she violated 161.001(1)(F). 
          Hurst’s second issue is sustained.
          C. Constructive Abandonment
          In her third issue, Hurst challenges the trial court’s finding that she
constructively abandoned A.A.A. pursuant to 161.001(1)(N). To determine that a
parent has constructively abandoned her child under 161.001(1)(N), the court must
find that (1) the child has been under the conservatorship of the Department for not
less than six months; (2) the Department has made reasonable efforts to return the
child to the parent; (3) the parent has not regularly visited or maintained significant
contact with the child; and (4) the parent has demonstrated an inability to provide the
child with a safe environment. Tex. Fam. Code. Ann. § 161.001(1)(N). Here, Hurst
does not dispute that A.A.A. has been in the custody of DFPS for at least six months. 
Thus, we examine the remaining three prongs to determine whether DFPS proved
constructive abandonment by clear and convincing evidence.  
          We begin our review of 161.001(1)(N) with its fourth prong, concerning
whether there is legally sufficient evidence to support the trial court’s finding that
Hurst demonstrated an inability to provide A.A.A. with a safe environment. Hall
testified that, while she was assigned to the case, Hurst never provided her any
evidence of a stable home or stable job. Nevertheless, Hurst argues that her own
failure to provide DFPS with proof that she could adequately care for her child is not
evidence that she could not do so. Hurst asserts that DFPS bore the burden of showing
her inability to provide for A.A.A., but never introduced any evidence showing that
she lived in an unsafe environment or that she had been incapable of providing for
A.A.A.’s needs. We agree.
          As discussed above, there is some evidence of Hurst’s inability to maintain
stable housing or employment. When a child has special needs that must be met, a
parent’s unstable moving pattern can weigh towards an inability to provide a safe
environment. See In re B.A., No. 14-00-00047-CV, 2001 WL 578314, at *4 (Tex.
App.—Houston [14th Dist.] May 31, 2001, no pet.) (not designated for publication)
(discussing the parent’s inability to provide for his child’s special health needs,
including Down’s Syndrome and Hirschsprung’s Disease). Here, however, there is
testimony that A.A.A. has no special needs. Additionally, Hall testified that Hurst’s
transportation problems were a concern, because they bear on whether she will be able
to care for A.A.A. if she is returned. However, DFPS failed to elaborate on how
transportation problems pertain to Hurst’s ability to provide a safe environment. 
          We recognize that A.A.A. was initially removed from Hurst while she was in
jail for shoplifting. However, Hurst testified, and DFPS did not refute, that this was
the first time she had ever been arrested. We have held that this isolated incident was
insufficient to constitute conduct which endangers A.A.A.’s physical or emotional
well-being under 161.001(1)(E), and, likewise, hold here that it was not enough to
demonstrate that Hurst is unable to provide a safe environment
          We hold that the evidence is legally insufficient to produce in the mind of a
reasonable factfinder a firm belief or conviction that Hurst demonstrated an inability
to provide A.A.A. with a safe environment. Because we hold that the fourth prong of
161.001(1)(N) was not proved, we need not address the remaining prongs in the
list—all of which must be proven. Therefore, we hold that the evidence is legally
insufficient to support the trial court’s determination that Hurst constructively
abandoned A.A.A. under 161.001(1)(N). Because the evidence is legally insufficient
to support the trial court’s finding, we need not reach Hurst’s factual sufficiency issue. 
We further hold that the trial court erred in terminating Hurst’s parental rights on the
grounds that she violated 161.001(1)(N). 
          We sustain Hurst’s third issue.
          D. Failure to Comply with Court Order
          To terminate parental rights based on 161.001(1)(O), a trial court must find by
clear and convincing evidence that the parent 
failed to comply with the provisions of a court order that specifically
established the actions necessary for the parent to obtain the return of the
child who has been in the permanent or temporary managing
conservatorship of the Department of Protective and Regulatory Services
for not less than nine months as a result of the child’s removal from the
parent under Chapter 262 for the abuse or neglect of the child. 

Tex. Fam. Code Ann. § 161.001(1)(O). 
          Hurst does not dispute that A.A.A. was in DFPS custody for at least nine
months, or that she did not comply with all the requirements of her family service plan. 
Instead, she argues that DFPS cannot meet its burden of proof under 161.001(1)(O),
because A.A.A. was not removed from her as a result of abuse or neglect, but solely
because she had been arrested and was unable to return to A.A.A. at the shelter.        
          DFPS counters by asserting that the Legislature did not intend to require a
finding of abuse or neglect of the child under 161.001(1)(O). Instead, according to
DFPS, this language merely clarifies that removal under this Subsection is proper if
the child was removed for any reason under Chapter 262. DFPS also argues that the
Texas Supreme Court has shown that proof of abuse or neglect is not required for a
finding pursuant to 161.001(1)(O). 
          Because this appeal requires us to interpret a Section of the Texas Family Code,
we restate the basic principles of statutory construction. Interpreting statutes is a legal
matter, subject to de novo review. Bragg v. Edwards Aquifer Auth., 71 S.W.3d 729,
734 (Tex. 2002). A trial court has no discretion when evaluating a question of law. 
See Huie v. DeShazo, 922 S.W.2d 920, 927 (Tex. 1996); Walker v. Packer, 827
S.W.2d 833, 840 (Tex. 1992). 
          The overriding goal of statutory interpretation is to determine the Legislature’s
intent. Cont’l Cas. Co. v. Downs, 81 S.W.3d 803, 805 (Tex. 2002). In order to
ascertain legislative intent, we first look to the plain and common meaning of the
words used by the Legislature. Tex. Gov’t Code Ann. § 311.011 (Vernon 2005);
Argonaut Ins. Co. v. Baker, 87 S.W.3d 526, 529 (Tex. 2002). It is a well-settled rule
of statutory construction that every word of a statute must be presumed to have been
used for a purpose. In re Bell, 91 S.W.3d 784, 790 (Tex. 2002). To ascertain
legislative intent, however, we must look to the statute as a whole and not to its
isolated provisions. Morrison v. Chan, 699 S.W.2d 205, 208 (Tex. 1985); Tex. Dep’t
of Banking v. Mount Olivet Cemetery Ass’n, 27 S.W.3d 276, 283 (Tex. App.—Austin
2000, pet. denied). In ascertaining legislative intent, we do not confine our review to
isolated statutory words, phrases, or clauses, but we instead examine the entire act.
Meritor Auto., Inc. v. Ruan Leasing Co., 44 S.W.3d 86, 90 (Tex. 2001).
          In this case, we are called upon to interpret the meaning of “removal from the
parent under Chapter 262 for abuse or neglect of the child.” We must presume that 
the phrase “abuse or neglect of the child” was used by the Legislature for a reason. 
See Bell, 91 S.W.3d at 790. With this in mind, we address DFPS’s arguments. 
          DFPS’s contention that the phrase at issue merely clarifies that removal under
this Subsection is proper if the child was removed for any reason under Chapter 262
is contradicted by Chapter 262, itself. Importantly, Section 161.001(1)(O) requires
that removal of a child under Chapter 262 be based on “the abuse or neglect of the
child.” (Emphasis added.) Under Chapter 262, removal can occur because the child
at issue was the victim of sexual abuse or neglect or is in an immediate threat of
danger. See Tex. Fam. Code Ann. §§ 262.102(a)(1), (c), 262.104 (Vernon Supp.
2006). However, in determining whether a child’s safety is in danger, a trial court may
also consider evidence showing that a person resides in the child’s household who has
abused or neglected another child. See id. § 262.102(b). Therefore, because Chapter
262 allows for removal based on evidence of the child at issue’s abuse or neglect and
on another child’s abuse of neglect, it is significant that the Legislature chose to
premise removal solely on the abuse or neglect of the child at issue.  
          DFPS also asserts that the supreme court has addressed the issue of whether
“abuse or neglect” are requirements of 161.001(1)(O). In J.F.C., the supreme court
upheld a termination based on 161.001(1)(O), but did not mention that the child was
removed for abuse or neglect. 96 S.W.3d 256, 278–79 (Tex. 2002). DFPS contends
that, by not mentioning that the child was removed for abuse or neglect, the supreme
court eliminated abuse or neglect as a required element of 161.001(1)(O). We
disagree.
          Under the facts of J.F.C., the children were initially removed from the parents
by the Texas Department of Protective and Regulatory Services (“DPRS”) without a
court order, pursuant to 262.104. Id. at 260. DPRS removed the children after
concluding “that it would be unsafe for the children to go home to the parents.” Id.
at 270–71. Therefore, the children were not removed because they were abused or
neglected, but rather, because it would have been unsafe for them to remain with their
parents. In upholding the termination, the court wrote:
The evidence establishes as a matter of law that the parents failed to
comply with the court’s orders specifying the actions the parents had to
take for the DPRS to return the children to the parents. The record also
conclusively establishes that the children were removed from their
parents under Chapter 262 of the Family Code, and it is undisputed that
they were in the DPRS’s custody for more than nine months after their
removal. Accordingly, the parental conduct described in subsection
161.001(1)(O) of the Family Code was established as a matter of law. 

Id. Thus, in holding that the evidence was conclusively established, the supreme
court’s analysis did not include whether the child at issue was removed for abuse or
neglect.
          However, we note that the specific question of whether a child must be removed
under Chapter 262 for that child’s own abuse or neglect was not brought before the
court. Instead, the court was asked to address the constitutionality of the broad-form
jury charge on parental termination used by the trial court. Id. at 277. The supreme
court did not reach this issue, however, because it held the evidence established
161.001(1)(O) as a matter of law. Id.
          The Texas Supreme Court has not reviewed a termination based on
161.001(1)(O) since J.F.C. Among the courts of appeals, most have not looked to
J.F.C. when reviewing a 161.001(1)(O) termination, but have acted similarly by not
analyzing whether the child at issue was removed under Chapter 262 for abuse or
neglect. However, a few decisions have treated a finding of abuse or neglect of the
child to be a required element.
          In re S.A.P., from the Waco court of appeals, specifically pointed out that
“abuse or neglect of the child” was required under 161.001(1)(O), and, because
testimony showed that the child was not removed for abuse or neglect, but because of
the risk caused by the parents’ prior history, held that there was no evidence to support
the jury’s finding. 169 S.W.3d 685, 705–06 (Tex. App.—Waco 2005, no pet.). The
Tyler court of appeals has consistently recognized “abuse or neglect of the child” as
an element of 161.001(1)(O). See In re K.H., No. 12-05-00077-CV, 2006 WL
3211299, at *5 (Tex. App.—Tyler Nov. 8, 2006, no pet.); In re M.B., No. 12-04-00350-CV, 2005 WL 3201071, at *4 (Tex. App.—Tyler Nov. 30, 2005, no pet.); In
re A.C., No. 12-04-00264-CV, 2005 WL 2404108, at *4 (Tex. App.—Tyler Sept. 30,
2005, no pet.). Additionally, a decision from the Amarillo court of appeals actually
designated “the child’s removal from the parent was a result of abuse or neglect of the
child” as the third element of 161.001(1)(O) and went on to conclude that the child at
issue was removed because of her parents’ neglect. In re M.B., No. 07-04-0334-CV,
2004 WL 2867544, at *2 (Tex. App.—Amarillo Dec. 14, 2004, no pet.).
          Because the supreme court did not expressly hold that “removal under Chapter
262 for abuse or neglect of the child” is not an element of 161.001(1)(O), we must
adhere to the unambiguous language of the statute. Thus, our legal sufficiency review
of the trial court’s finding of 161.001(1)(O) must consider whether A.A.A. was
removed under Chapter 262 for her abuse or neglect.
          Here, the trial court found that A.A.A. was removed from Hurst pursuant to
Section 262.104, which allows for a child’s removal without a court order. Tex. Fam.
Code. Ann. § 262.104. Specifically, in an affidavit attached to DFPS’s original
petition for the termination of the parent-child relationship between Hurst and A.A.A.,
DFPS employee Shaniea Pennygraph stated that A.A.A. “was placed into protective
custody because her mother could not be located and there were no other CPS
approved alternate placement options available.” Thus, A.A.A. was not removed
because of her abuse or neglect, but simply because her mother was missing.
          Because there is no evidence of a mandatory statutory element of
161.001(1)(O), we hold that the evidence is legally insufficient to support the trial
court’s finding of a violation of 161.001(1)(O). Because the evidence is legally
insufficient, we need not address Hurst’s factual sufficiency complaint. Additionally,
we hold that the trial court erred in terminating Hurst’s parental rights on the grounds
that she violated 161.001(1)(O).
          Hurst’s fourth issue is sustained. 
          E. Best Interest
          Because we hold that the evidence is legally insufficient to support the trial
court’s findings under 161.001(1), we need not review the sufficiency of the trial
court’s finding that termination is in A.A.A.’s best interest under 161.001(2). 
Therefore, we reverse the trial court’s termination of the parent-child relationship
between Hurst and A.A.A. and render judgment denying DFPS’s petition for
termination of Hurst’s parental rights. See Tex. R. App. P. 43.2(c). 
Sole Managing Conservator
          Having reversed the termination of Hurst’s parental rights, we now turn to
Hurst’s sixth issue, which asks whether the appointment of DFPS as sole managing
conservator should also be reversed. Hurst first contends that, because the trial court’s
appointment of DFPS as A.A.A.’s sole managing conservator resulted from the trial
court’s termination of Hurst and Alexander’s parental rights, the appointment must
also be reversed. 
          We addressed this issue in Earvin v. Department of Family and Protective
Services. 229 S.W.3d 345 (Tex.—Houston [1st Dist.] 2007, no pet.). In Earvin, we
concluded that, because the trial court appointed DFPS as conservator after finding,
independent of its termination of parental rights finding, that appointment of the parent
would not be in the child’s best interest because it would significantly impair the
child’s physical health or emotional development, appointment of DFPS was a
separate issue that required independent analysis. Id. at 350–51. The Texas Supreme
Court recently reaffirmed that a parent must bring an independent challenge on the
issue of conservatorship in similar situations. See In re J.A.J., __ S.W.3d __, 2007
WL 3230169, at *1 (Tex. Nov. 2, 2007) (concluding that, where the trial court finds
that appointment of the parent would significantly impair the child’s physical health
or emotional development, and appointment of DFPS is in the child’s best interest,
“reversal of a termination judgment . . . does not affect the trial court’s conservatorship
appointment absent assigned error”).
          Here, the trial court found that appointment of Hurst or Alexander would not
be in A.A.A.’s best interest because such appointment would significantly impair
A.A.A.’s physical health or emotional development. The trial court also found that
appointment of DFPS as conservator was in A.A.A.’s best interest. Therefore, DFPS’s
appointment as conservator is independent of the trial court’s termination of Hurst’s
parental rights and requires independent analysis.
          We begin by addressing whether we are precluded from reviewing Hurst’s sixth
issue because she failed to follow the procedures for appellate review of a final order
under Section 263.405 of the Family Code. Tex. Fam. Code Ann. § 263.405 (Vernon
Supp. 2006). Subsection 263.405(b) requires an appellant to file, not later than the
15th day after the date a final termination order is signed, “a statement of the point or
points on which the party intends to appeal.” Id. § 263.405(b). This statement of
points may also be combined with a motion for new trial. Id. Under Subsection
263.405(i), “[t]he appellate court may not consider any issue that was not specifically
presented to the trial court in a timely filed statement of the points on which the party
intends to appeal or in a statement combined with a motion for new trial. For purposes
of this Subsection, a claim that a judicial decision is contrary to the evidence or that
the evidence is factually or legally insufficient is not sufficiently specific to preserve
an issue for appeal.” Id. § 263.405(i). 
          The record includes Hurst’s timely filed motion for new trial and statement of
points, which indicates her intention to challenge the legal and factual sufficiency of
the evidence in support of the trial court’s findings of 161.001(1)(E), (F), (N), (O), and
(2). However, Hurst urged no point concerning the trial court’s appointment of DFPS
as A.A.A.’s sole managing conservator. Therefore, because Hurst failed to
specifically present this issue in her statement of points, we are precluded from
considering it. See Pool v. Texas Dept. of Family & Protective Servs., 227 S.W.3d
212, 215 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Accordingly, Hurst’s sixth
issue is overruled.
Conclusion
          We reverse and render judgment denying DFPS’s petition for termination of
Hurst’s parental rights. We affirm the portion of the decree assigning DFPS as the
sole managing conservator of A.A.A.
 
 
                                                                        George C. Hanks, Jr.
                                                                        Justice
 
Panel consists of Justices Taft, Hanks, and Higley.