# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-16-00528-CV

---

**R. R., Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

---

### FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT
### NO. C2015-1680A, HONORABLE DIB WALDRIP, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

This is an appeal from a final order, following a bench trial, terminating the parental

rights of R.R. to her son, F.R., and her daughter, C.R. In two issues on appeal, R.R. asserts that the

evidence is legally and factually insufficient to support the district court's findings that she had

committed each of the alleged statutory grounds for termination and that termination of her parental

rights was in the best interest of the children. We will affirm the district court's order.

## BACKGROUND

The Texas Department of Family and Protective Services (the Department) brought

suit to terminate R.R.'s parental rights based on allegations that R.R. had, among other grounds for

termination, endangered her children's well-being by using methamphetamine and exposing her

children to the threat of domestic violence. Following the termination hearing, which we discuss

in more detail below as it is relevant to R.R.'s issues on appeal, the district court found by clear and

convincing evidence that termination of the parent-child relationship was in the best interest of the children and that R.R. had committed the following statutory grounds for termination: (1) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical or emotional well-being of the children; (2) constructively abandoned the children; (3) failed to comply with the provisions of a court order that specifically established the actions necessary for R.R. to obtain the return of the children; and (4) used a controlled substance in a manner that endangered the health or safety of the children, and failed to complete a court-ordered substance abuse treatment program.[1]  This appeal followed.

## STANDARD OF REVIEW

In reviewing the sufficiency of the evidence supporting an order terminating parental rights, we examine whether the Department proved, by clear and convincing evidence, that the parent engaged in conduct that amounts to statutory grounds for termination and that termination is in the children's best interest.[2]  Clear and convincing evidence is a heightened burden of proof that requires "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."[3]  On appeal, we apply a standard of review that reflects this burden of proof.[4]

---

[1]  *See* Tex. Fam. Code § 161.001(1)(E), (N), (O), (P), (2).

[2]  *See In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002).

[3]  Tex. Fam. Code § 101.007; *see C.H.*, 89 S.W.3d at 25.

[4]  *See In re J.F.C.*, 96 S.W.3d 256, 264-66 (Tex. 2002).

2

"In a legal sufficiency review, a court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true."[5] "To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so."[6] "A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible."[7] However, "[t]his does not mean that a court must disregard all evidence that does not support the finding."[8] The reviewing court must consider "undisputed facts that do not support the finding."[9] "If, after conducting its legal sufficiency review of the record evidence, a court determines that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then that court must conclude that the evidence is legally insufficient."[10]

In a factual sufficiency review, "the inquiry must be 'whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's

---

[5] *Id*. at 266.

[6] *Id*.

[7] *Id*.

[8] *Id*.

[9] *Id*.

[10] *Id*.

3

allegations.'"[11] We "must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing," but we also "should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding."[12] "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient."[13]

## ANALYSIS

### Statutory termination grounds

In her first issue, R.R. asserts that the evidence is legally and factually insufficient to support the district court's findings regarding the statutory grounds for termination. Although the district court found that R.R. had committed multiple grounds for termination, it was required to find only one statutory ground in order to terminate her parental rights.[14] Therefore, so long as there is sufficient evidence to support at least one of those grounds, we must uphold the finding.[15] We will focus our analysis on the ground stated in section 161.001(1)(E), which provides that parental rights may be terminated if the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child."

---

[11] *Id*. (quoting *C.H.*, 89 S.W.3d at 25).

[12] *Id*.

[13] *Id*.

[14] *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *Spurck v. Texas Dep't of Family & Protective Servs.*, 396 S.W.3d 205, 221 (Tex. App.—Austin 2013, no pet.).

[15] *See A.V.*, 113 S.W.3d at 362.

4

"Under section 161.001(1)(E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical well-being was the direct result of Appellant's conduct, including acts, omissions, or failures to act."[16] "Termination under subsection 161.001(1)(E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of [endangering] conduct by the parent is required."[17] "The requisite endangerment may be found if the evidence shows a parent's course of conduct that has the effect of endangering the child's physical or emotional well-being."[18] Although "'endanger' means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury."[19] "Rather, 'endanger' means to expose to loss or injury; to jeopardize."[20] "Endangerment can occur through both acts and omissions."[21] "[T]he conduct does not have to cause a concrete threat of injury to the

[16] *In re M.E.-M.N.*, 342 S.W.3d 254, 262 (Tex. App.—Fort Worth 2011, pet. denied).

[17] *In re C.A.B.*, 289 S.W.3d 874, 883 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (citing *In re J.W.*, 152 S.W.3d 200, 205 (Tex. App.—Dallas 2004, pet. denied)).

[18] *Id.*

[19] *Texas Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987) (citing *Allred v. Harris Cnty. Child Welfare Unit*, 615 S.W.2d 803, 806 (Tex. Civ. App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.)).

[20] *Id.* (citing Webster's New Twentieth Century Dictionary of the English Language 599 (1976)).

[21] *In re W.J.H.*, 111 S.W.3d 707, 715 (Tex. App.—Fort Worth 2003, pet. denied) (citing *Phillips v. Texas Dep't of Protective & Regulatory Servs.*, 25 S.W.3d 348, 354 (Tex. App.—Austin 2000, no pet.)).

child."[22] Nor does the conduct "have to occur in the presence of the child."[23] "And the conduct may occur . . . both before and after the child has been removed by the Department."[24] "If the evidence shows that the parent has engaged in a course of conduct which has the effect of endangering the child, then the finding under subsection E may be upheld."[25] "Intentional criminal activity that exposes a parent to incarceration is conduct that endangers the physical and emotional well-being of a child."[26] This is true even when the criminal activity does not result in a final conviction.[27] "As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child."[28] Therefore, "a parent's use of narcotics and its effect on his or her ability to parent may qualify as an endangering course of conduct."[29] Additionally,

[22] *Id*. at 716 (citing *In re D.M.*, 58 S.W.3d 801, 811 (Tex. App.—Fort Worth 2001, no pet.); *Director of Dallas Cnty. Child Protective Servs. Unit v. Bowling*, 833 S.W.2d 730, 733 (Tex. App.—Dallas 1992, no writ)).

[23] *Walker v. Texas Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (citing *Bowling*, 833 S.W.2d at 733).

[24] *Id*. (citing *In re S.M.L.D.*, 150 S.W.3d 754, 757-58 (Tex. App.—Amarillo 2004, no pet.); *Avery v. State*, 963 S.W.2d 550, 553 (Tex. App.—Houston [1st Dist.] 1997, no pet.)).

[25] *W.J.H.*, 111 S.W.3d at 716 (citing *D.M.*, 58 S.W.3d at 811).

[26] *In re V.V.*, 349 S.W.3d 548, 554 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (citing *Boyd*, 727 S.W.2d at 533; *Allred*, 615 S.W.2d at 806; *Avery*, 963 S.W.2d at 553).

[27] *See In re T.G.R.-M.*, 404 S.W.3d 7 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (citing *In re S.M.L.*, 171 S.W.3d 472, 479 (Tex. App.—Houston [14th Dist.] 2005, no pet.)).

[28] *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied) (citing *In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied)).

[29] *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009) (citing *In re S.N.*, 272 S.W.3d 45, 52 (Tex. App.—Waco 2008, no pet.); *Toliver v. Texas Dep't of Family & Protective Servs.*, 217 S.W.3d 85, 98 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *R.W.*, 129 S.W.3d at 739); *see also Walker*,

"[d]omestic violence, want of self control, and propensity for violence may be considered as evidence of endangerment."[30] The violence does not have to be directed toward the child or result in a final conviction—"Texas courts routinely consider evidence of parent-on-parent physical abuse in termination cases without specifically requiring evidence that the conduct resulted in a criminal conviction."[31] Similarly, exposing one's child to the risk of domestic violence from others may also constitute endangering conduct.[32]

Here, the evidence in support of the district court's endangerment finding included testimony tending to show that R.R. had a history of drug use. R.R. admitted to having used "meth" approximately "three times a week" for the past eight years, although she denied that she had ever used methamphetamine in the presence of her children. However, R.R. acknowledged that on one occasion, methamphetamine was "still in [her] system" while the children were in her care. R.R. also acknowledged that she had tested positive for methamphetamine use while the case was ongoing, although she claimed that it had been "over three weeks" since she had last used.

312 S.W.3d at 618 ("Because it exposes the child to the possibility that the parent may be impaired or imprisoned, illegal drug use may support termination under section 161.001(1)(E).").

[30] *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.); *see also In re C.J.O.*, 325 S.W.3d 261, 265 (Tex. App.—Eastland 2010, pet. denied) ("If a parent abuses or neglects the other parent or other children, that conduct can be used to support a finding of endangerment even against a child who was not yet born at the time of the conduct.").

[31] *V.V.*, 349 S.W.3d at 556 (citing *In re K.L.R.*, 162 S.W.3d 291, 305 (Tex. App.—Tyler 2005, no pet.); *In re W.S.M.*, 107 S.W.3d 772, 773 (Tex. App.—Texarkana 2003, no pet.); *In re M.R.*, 975 S.W.2d 51, 55 (Tex. App.—San Antonio 1998, pet. denied); *Allred*, 615 S.W.2d at 805).

[32] *See In re M.R.*, 243 S.W.3d 807, 818-19 (Tex. App.—Fort Worth 2007, no pet.); *Sylvia M. v. Dallas Cnty. Welfare Unit*, 771 S.W.2d 198, 204 (Tex. App.—Dallas 1989, no writ).

R.R. further testified that police officers had been called to her residence on three occasions in response to reports of domestic violence involving her husband, who was also a methamphetamine user, according to R.R. On the first occasion, R.R. testified, her husband "shoved me onto the ground"; on the second occasion, "[h]e hit me in the jaw" with "[h]is fist"; and, on the third occasion, "[h]e grabbed my face and pulled me out of my car and threw me on the ground and was choking me." R.R. also testified that she and her husband "were still together" while the case was ongoing, although she claimed that her husband had "left [her]" in February 2016, several months prior to the final hearing, and that she had not lived with him since that time. However, R.R.'s mother, R.M., testified that on a previous occasion when R.R. and her husband had separated and the children were in R.M.'s care, R.R. had chosen to return to her husband instead of staying with R.M. and the children. R.M. also testified that she believed R.R. had a problem with drugs, that R.R. had used drugs while the case was ongoing, and that R.R. had told her that she would continue to use drugs and that using drugs was "okay."

Chris Willis, a caseworker for Child Protective Services (CPS), testified that the "primary concerns" of CPS when creating the family service plan in this case were "drug use and domestic violence." According to Willis, R.R. had no "clean" drug tests while the case was ongoing, nor did she complete court-ordered classes on domestic violence or court-ordered services to treat her drug addiction.

Viewing the above and other evidence in the light most favorable to the finding, it tends to show that R.R. had regularly used methamphetamine for years, including when the children were in her care, had continued to use methamphetamine while the case was ongoing, and had done little if anything to demonstrate that she would stop using methamphetamine in the future.

8

Additionally, the evidence also tends to show that R.R. had a relationship with a man who had assaulted her on multiple occasions and who was also a methamphetamine user, and that her relationship with this man had continued while the case was ongoing. This and other evidence supports the district court's finding that R.R. had endangered the children's physical and emotional well-being. Accordingly, we conclude that the evidence is legally sufficient to support the district court's endangerment finding.[33]

After giving due consideration to the disputed evidence in the case, we reach the same conclusion regarding the factual sufficiency of the evidence. The disputed evidence consists of R.R.'s testimony denying that she had used methamphetamine while the children were in her care and denying that the children had been exposed to domestic violence. However, the district court was free to disbelieve R.R.'s testimony. On this record, we cannot say that "the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction" that R.R. had endangered the physical and emotional well-being of her children.[34]

---

[33] *See, e.g.*, *J.O.A.*, 283 S.W.3d at 345; *M.E.-M.N.*, 342 S.W.3d at 263; *C.J.O.*, 325 S.W.3d at 265; *C.A.B.*, 289 S.W.3d at 885; *Vasquez v. Texas Dep't of Family & Protective Servs.*, 190 S.W.3d 189, 196 (Tex. App.—Houston [1st Dist.] 2005, pet. denied); *J.I.T.P.*, 99 S.W.3d at 845; *Robinson v. Texas Dep't of Protective & Regulatory Servs.*, 89 S.W.3d 679, 686-87 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

[34] *See In re J.F.C.*, 96 S.W.3d at 266.

Because we conclude that the evidence is legally and factually sufficient to support the district court's endangerment finding, we need not consider the sufficiency of the evidence supporting the other alleged statutory grounds for termination.[35]

We overrule R.R.'s first issue.

**Best interest**

In R.R.'s second issue, she asserts that the evidence is legally and factually insufficient to support the district court's finding that termination of R.R.'s parental rights was in the best interest of the children. When deciding the best-interest issue, we consider the well-established *Holley v. Adams* factors, which include the children's wishes, the children's emotional and physical needs now and in the future, emotional or physical danger to the children now and in the future, the parenting abilities of the party seeking custody, programs available to help that party, plans for the children by the party seeking custody, the stability of the proposed placement, the parent's conduct indicating that the parent-child relationship is improper, and any excuses for the parent's conduct.[36] The Department need not prove all of the *Holley* factors as a "condition precedent" to termination, and the absence of some factors does not bar the factfinder from finding by clear and convincing evidence that termination is in a children's best interest.[37] The need for permanence is the paramount

---

[35] *See* Tex. R. App. P. 47.1; *Spurck*, 396 S.W.3d at 221.

[36] *See* 544 S.W.2d 367, 371-72 (Tex. 1976).

[37] *C.H.*, 89 S.W.3d at 27.

10

consideration when determining the children's present and future physical and emotional needs.[38]

Moreover, a parent's statutorily offensive conduct is often intertwined with the best-interest determination.[39]

In addition to considering evidence regarding the statutory termination grounds, summarized above, the district court also considered evidence regarding the children's well-being. Willis, the CPS caseworker, testified that the children were living with their grandmother, R.M., and that they "get along with their grandmother very well." Willis also testified that the placement was safe and stable and that R.M. was able to meet the needs of the children, both of whom, Willis explained, required specialized care to address various health issues. According to Willis, the Department had planned for the children to remain in their current placement, and R.M. had expressed a desire to adopt the children if R.R.'s parental rights were terminated. Willis further testified that in his opinion, R.R. could not provide a safe and stable home for the children, due to her "continued drug use and domestic violence."

Shawn McCormick, a CASA volunteer who was familiar with the case, provided similar testimony regarding R.M.'s ability to provide a safe and stable home for the children and R.R.'s inability to do so. When asked why he believed that it was in the children's best interest for them to remain in R.M.'s care, McCormick testified as follows:

---

[38] *In re D.R.A.*, 374 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *Dupree v. Texas Dep't of Protective and Regulatory Servs.*, 907 S.W.2d 81, 87 (Tex. App.—Dallas 1995, no writ)).

[39] *Horvatich v. Texas Dep't of Protective & Regulatory Servs.*, 78 S.W.3d 594, 601 (Tex. App.—Austin 2002, no pet.) (citing *Holley*, 544 S.W.2d at 372; *Leal v. Texas Dep't of Protective & Regulatory Servs.*, 25 S.W.3d 315, 321 (Tex. App.—Austin 2000, no pet.)).

> She provides a very safe and loving environment for them. They also love being with their great grandmother who lives in the residence with them. They have told me that they get to do so many more things. They feel safe, that she takes them and does things with them, things that they never got to do before. And really in my opinion, they're getting to experience a true—well, not just in my opinion. They shared with me that this was the first summer that they ever got to go and play outside and just be kids.

Finally, R.M. testified that, if possible, she would seek adoption of the children and that her plan was to have the children live with her until they became adults.

Viewing the above and other evidence in the light most favorable to the district court's finding, we conclude that the evidence is legally sufficient to prove that termination of R.R.'s parental rights was in the best interest of the children. Based on the evidence of R.R.'s continued drug use and history of domestic violence, the district court could have reasonably inferred that the children were not safe in R.R.'s care and that the children's current placement would provide a more safe and stable environment for them.

After giving due consideration to the disputed evidence in the case, we reach the same conclusion regarding the factual sufficiency of the evidence. The disputed evidence on this point consists solely of R.R.'s testimony claiming that she would be able to care for the children and provide them with a safe and stable home. The district court was free to disbelieve her testimony, particularly in light of the other evidence, summarized above, tending to show that R.R. had continued to use drugs while the case was ongoing and thus continued to put her children's safety and stability at risk.

We overrule R.R.'s second issue.

**CONCLUSION**

We affirm the district court's termination order.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton, and Field

Affirmed

Filed:   November 3, 2016